**NORTHEAST OHIO APARTMENT ASSOCIATION et al., Appellees,**

**v.**

**CUYAHOGA COUNTY BOARD OF COUNTY COMMISSIONERS et al., Appellants.**

[Cite as *Northeast Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.* (1997), 121 Ohio App.3d 188.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 70370.

Decided June 9, 1997.

*Taft, Stettinius & Hollister, Timothy J. Grendell, Mark A. Ferguson* and *Kathleen M. Blood*, for appellees.

*Stephanie Tubbs Jones*, Cuyahoga County Prosecuting Attorney, and *Ronald K. Riley*, Assistant Prosecuting Attorney, for appellants.

PATRICIA ANN BLACKMON, Judge.

The Cuyahoga County Board of Commissioners ("Board")[1] appeals the trial

---

1. The commissioners are the defendants-appellants in this action. They are also joined by County Commissioners Mary O. Boyle and Timothy Hagan, and former Commissioner James

court's granting of summary judgment to owners [2] of apartments and condominiums who claimed that their sewage rates had been increased to an unreasonable level. These sewage rates became effective January 1, 1994 after several resolutions [3] were voted on by the Board. The Board argues that these resolutions were voted on in a public forum and that they were signed by the Board's president. The Board assigns the following errors for our review:

"I. The court of common pleas erred when it granted plaintiffs–appellees summary judgment based on the alleged violation of the sunshine law, O.R.C. 121.22(A) and (H), by the Cuyahoga County Board of Commissioners.

"II. The court of common pleas erred in granting plaintiffs–appellees summary judgment based on the Cuyahoga County Board of Commissioners' alleged failure to comply with O.R.C. 305.10 and 305.11."

After reviewing the record and the arguments of the parties, we reverse the judgment of the trial court. The apposite facts follow.

The facts of this case center on the process used by the Board to enact these resolutions that called for the use of either the Equivalent Residential Unit ("ERU") [4] formula or the lineal front footage [5] method. The Board adopted these resolutions that everyone agrees increased the sewage rates of apartment and condominium owners. However, it is equally agreed that the Board has the power to set these rates under R.C. 6117.02.

----

Petro; Cuyahoga County Director of Community Services Edwin Price; Cuyahoga County Auditor Timothy McCormack; and former Cuyahoga County Sanitary Engineer James Brueggeman, P.E.

2. The owners are plaintiffs-appellees and include the following parties: Northeast Ohio Apartment Association, Marsol Apartments Company Limited Partnership, Hamilton House II Company, Howard A. Glickman, and Patricia C. Glickman..

3. The public meetings were held on July 24, 1989, at which Resolution No. 893207, Journal 223 was passed; August 6, 1991, at which Resolution No. 913122, Journal 231 was passed; and on August 13, 1993, at which Resolution No. 933428, Journal 239 was passed.

4. The ERU basis is a theoretical method of billing the property owner. It is based on the number of living units within a property and the Ohio EPA reserve requirements for the construction of new sewage treatment facilities. Additionally, each apartment unit, whether vacant or occupied, is included in calculating the ERU for an apartment building or condominium property. Then, the ERU is multiplied by the Board's charge per front foot for the sewer district based on the average front footage for all residential units in the community. This results in a totally "theoretical" or hypothetical flow-based sewer maintenance fee for the apartment or condominium property, which has absolutely no relationship to actual flows generated by that property or the sewer maintenance costs generated by that property.

5. In the lineal front footage formula, the budgeted cost of sewer maintenance services is divided by the front footage of the properties served by the sewer lines in the sewer district or municipality resulting in a per-front-foot maintenance charge.

R.C. 121.22, 305.09 and 305.10 require that the resolutions be adopted at public meetings. R.C. 305.11 requires that the Board president sign the enacted resolutions.

The Board presented Clerk Marjorie Pettus's affidavit. Her affidavit stated that these resolutions were adopted in the usual manner. The usual manner was defined as follows: "When a matter is accepted by vote of the Commissioners, the information and vote is then reduced to a resolution. That resolution, along with the record of the previous meeting, is *then read to the Board*, and, if correct, will be approved and signed by the Board President and Clerk." (Emphasis added.)

The owners relied on Commissioner Mary O. Boyle's deposition:

"Q. Okay. So again, let me just ask you the question. On Exhibit 3 it reflects that you did not vote on this one. But again, is the normal procedure for all these resolutions that they vote on the title and don't have the actual document at the time?

"A. That's right. But they are presented, they are presented in a public forum. The director of the department of community services would come forward. The traditional way would be to come forward and say this is the— today you are going to act on the annual or the biannual or whatever.

"Q. But the actual physical document is not there. Does somebody have them with them at that point in time or is it drafted afterwards, if you know?

"A. I'm not sure that it doesn't happen in both ways. There may be—the actual resolution may, in fact, have been prepared in advance or it could be that other papers are before the clerk of the board of county commissioners in advance and it could be that the resolution is prepared after the board votes in response to the materials that were provided by the director."

Board President Hagan in his depositions agreed with Clerk Marjorie Pettus's affidavit that the text of these resolutions was voted on in a public forum.

The trial court held that the resolutions were adopted at public meetings. However, it concluded, after weighing the evidence, that the Board voted on the titles of these resolutions, that the text was not present or otherwise presented to the Board and that the Board president had failed to sign the resolutions. This appeal followed.

We will address both of the Board's assigned errors together because they raise the issue of whether as a matter of law the trial court was correct in granting summary judgment to the owners.

■ The standard of review in a summary judgment appeal is *de novo*. *De novo* review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine if as a matter of law

genuine issues exist for trial. *Dupler v. Mansfield Journal Co., Inc.* (1980), 64 Ohio St.2d 116, 18 O.O.3d 354, 413 N.E.2d 1187. *De novo* review requires that we review the trial court's decision independently and without deference to it. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 622 N.E.2d 1153. *De novo* review in substance is a determination by us whether the trial court has chosen the correct law and applied it correctly, and since we both are presumed to know the correct law, we are not required to defer to the trial court.

█ In this case, the law is uncomplicated. It requires that the Board of Commissioners hold public hearings before it enacts a resolution, and that the Board president sign the resolution. See R.C. 122.22, 305.09, and 305.11. If the facts show that the resolutions in this case were adopted in secrecy and the Board president failed to sign them as well, then as a matter of law summary judgment was correctly granted. Otherwise, it is the duty of the trial court to "submit an essential issue to the jury when there is sufficient evidence relating to that issue to permit reasonable minds to reach different conclusions on that issue." *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881. Generally, where the evidence is not in conflict or the facts are admitted, the question is as a matter of law, one for the court, not a jury. *Id.* at 146, 524 N.E.2d at 883–884.

Thus, our inquiry begins and ends when we have resolved whether no genuine issue as to any material fact exists for trial and whether reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmovant, who is entitled to have the evidence construed most strongly in its favor. See *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267; Civ.R. 56. These two issues depend on each other in the summary judgment context.

█ "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211–212. This means that the factual dispute must be ascertainable and sufficient evidence must exist to support the factual dispute. *Id.* at 249, 106 S.Ct. at 2510–2511, 91 L.Ed.2d at 212.

█ Here, the Board argues that in Clerk Marjorie Pettus's affidavit she averred that these resolutions were adopted in the usual manner. "The usual manner" meant that a proposal was made, it was reduced to a resolution, and in a public meeting the resolution was read out loud to the Board. After enactment, it was signed by the Board president. Pettus averred that this procedure was followed on the day these resolutions were signed. This, the Board argues, is

sufficient to establish a genuine issue for trial and establish that a factfinder could find for it.

However, the owners claim that these resolutions were voted on by titles only. The owners and the trial court inferred that this meant that the text was not present at the meeting, which they inferred was a secret meeting. This, the owners argue, is supported by Mary Boyle's deposition. We disagree.

Commissioner Mary Boyle's deposition is not in conflict with Pettus's affidavit and Hagan's deposition. In fact, she said that they vote on the titles but the resolutions were presented at their public meeting. This is consistent with Pettus, who said they were presented at the public meeting by reading them aloud.

However, after Boyle's above response, the owners' lawyer said, "But the actual physical document is not there." Boyle responded, "I'm not sure that it doesn't happen in both ways." She went on to elaborate that the resolutions could be prepared before the public meeting or after the public meeting. Before this elaboration, she had said that she was not sure of the procedure. To us, this is not an admission that resolves the factual dispute. If anything, it further complicates the issue and establishes for this court that indeed a factual dispute does exist. In any event, even if Boyle's deposition was not specific as to the procedure used in the adoption of these resolutions, Pettus's affidavit was.

Also, on the issue of the Board president's signature, Pettus said in her affidavit that the resolutions were signed by the president. The signed resolutions were attached to her affidavit but not submitted with the Board's brief in opposition to the owners' motion for summary judgment. However, the signed copy was attached to the Board's brief to this court. Regardless of this fact, it is our opinion that Pettus's affidavit alone was a basis for the factfinder to find for the Board on this issue as well as the public forum issue.

Finally it appears from the record that the trial court weighed the evidence and chose inferences in favor of the owners. This it cannot do. *Dupler*, 64 Ohio St.2d at 121, 18 O.O.3d at 357–358, 413 N.E.2d at 1191–1192. Instead, the court must examine the evidence and resolve all questions of credibility in favor of the nonmovant, which is our task as well. *Id.* Thus, where the Board says in its affidavit that these resolutions were voted on at a public meeting, that the resolutions were read out loud, and that the Board president did sign them, the trial court is duty-bound to accept this as true. Accordingly, we conclude that the Board's assigned errors are well taken.

*Judgment reversed.*

KARPINSKI, J., concurs.

JAMES D. SWEENEY, P.J., dissents.

JAMES D. SWEENEY, Presiding Judge, dissenting.

While the majority applies the proper standard of review for a motion for summary judgment, I must respectfully dissent from the interpretation placed upon several aspects of the evidence relied upon by the majority and the conclusions derived therefrom.

My first concern involves the use of the affidavit of Board of Commissioners Clerk Marjorie Pettus. The majority states, quite correctly, that Pettus averred that the resolutions at issue were presented to the Board in the "usual manner" and were approved by the commissioners. Next, the majority defines the term "usual manner" by detailing the language of R.C. 305.11. Despite the lack of any explanation of the contested term within the affidavit, the majority interprets Pettus's use of the term "usual manner" as Pettus having presented the resolutions at the public hearing and having them voted on and signed following that hearing pursuant to R.C. 305.11. The term could just as easily be interpreted as supporting the contention that the text of the resolution was not before the Board at the hearing, a view which is supported by the explicit deposition testimony of Commissioner Boyle, who stated the following:

"Q. If I can just direct your attention to Page 3 though, you did vote for the resolution?

"A. That's correct. But when we vote on the recommendations that come to us each week at our meetings, *we do not have these resolutions in front of us.*

"Q. If I may ask, *what do you vote on?*

"A. *We vote on a, basically a title.*

"Q. So at the time of voting you did not have the complete document before you?

"A. *We do not have it in front of us when we take votes. Right."* (Emphasis added.)

Given the consistent testimony of all commissioners that they did not have any recollection of the resolution language, of the reasons for modifying the way in which the sewage rate is determined, or voting for the text of the resolution, it is a fair inference to conclude that the Board's "usual manner," which is at odds with the usual manner dictated by the statute, is to vote on titles of resolutions and then prepare the text of the resolution after the vote is taken. Accordingly, I would find that there is no genuine issue of a material fact regarding the first assignment of error.

Turning my attention to the second assignment of error, I note that there was no demonstration before the trial court through documentary evidence that the resolutions were signed by the commissioners and the Board president as provided by R.C. 305.11.

The record of proceedings provided to the trial court clearly demonstrates that the resolutions at issue do not contain the signature of the Board president, Timothy Hagan, or any other commissioner,[6] but do contain the clerk's signature. In fact, the resolutions do not even contain a space or line upon which the Board president's signature, or that of the remaining commissioners, is to be placed. "It is axiomatic that when used in a statute, the word 'shall' denotes that compliance with the commands of that statute is mandatory unless there appears a clear and unequivocal legislative intent that it receive a construction other than the ordinary usage." *State ex rel. Botkins v. Laws* (1994), 69 Ohio St.3d 383, 385, 632 N.E.2d 897, 900, citing *Ohio Dept. of Liquor Control v. Sons of Italy Lodge 0917* (1992), 65 Ohio St.3d 532, 534, 605 N.E.2d 368, 369–370. Considering the pertinent clauses of R.C. 305.11 ("shall" be read by the clerk, "and," if correct, "approved and signed" by the commissioners; "shall" be certified by the president and the clerk of the Board), it is evident that the statute mandates that the minutes be (1) read by the clerk and, if correct, then (2) signed by the commissioners, then (3) certified by the board president and the clerk of the Board, thereby authenticating the minutes as correct.

The analysis does not end at this point, however. What must be reviewed is whether the absence of the required signatures on the record invalidates the resolution due to the lack of proper recording, or is the resolution effective upon the adopting vote. There are two schools of thought on this question.

Appellants rely solely upon two Attorney General advisory opinions from fifty years ago. See 1945 Ohio Atty.Gen.Ops. No. 208, and 1941 Ohio Atty.Gen.Ops. No. 3509. Opinion No. 3509 provides that the failure of a county commissioner to sign the record of the minutes of a board meeting, as required by G.C. 2407 (the predecessor to R.C. 305.11), did not affect the force or validity of the resolutions adopted at such meeting. The Attorney General relied upon a passage drawn from Corpus Juris and several non-Ohio cases cited therein to advance the notion that the recordation of the record is merely a matter to ensure the correctness of the records of the official action rather than a step in the official proceedings and was not the action of the Board, which is reflected by the actual vote of the Board. Opinion No. 208 involved a similar type of issue and the Attorney

---

**6.** The sample copy of the Board's journal, attached as exhibit E of the appellants' brief and relied upon by the majority at the end of the discussion of the second assignment of error, was not before the trial court and cannot be considered part of the record on appeal. See App.R. 9(A).

General relied upon the earlier Opinion No. 3509, without elucidation, in coming to the same conclusion.

Since these Attorney General opinions, this writer could find only two unreported decisions, curiously both from the Third Appellate District of Ohio and from the same panel of judges (Presiding Judge Guernsey authored the opinions, with Judges Cole and Miller concurring), addressing the issue before us, to wit, whether the signing and recordation of the minutes is an official step in the official proceedings requiring strict compliance lest the official action be invalidated in their absence.

The first, and earlier, unreported case is *In re Resolution to Proceed with Constr. of Am. # 2 Sewer Improvement Area* (Mar. 22, 1985), Allen App. No. 1–84–66, unreported, 1985 WL 9101, which applied 1941 Ohio Atty.Gen.Ops. No. 3509 in determining that the decision of the board of commissioners was effective upon the vote and the failure to comply with the recordation requirements under R.C. 305.11 did not invalidate the official action.

The second, and more recent, unreported opinion is *Shroyer v. Logan Cty. Bd. of Commrs.* (Mar. 14, 1986), Logan App. No. 8–84–30, unreported, 1986 WL 3485, which analogized the recording requirement of R.C. 305.11 as a prerequisite to finality through the recordation in an official journal similar in nature to the necessity of a court's ruling being journalized in the court's journal so as to provide that degree of finality "necessary to form the predicate for further action or challenge." *Id.*, citing *Swafford v. Norwood Bd. of Edn.* (1984), 14 Ohio App.3d 346, 348, 14 OBR 414, 415–416, 471 N.E.2d 509, 511–512.

I would agree with the reasoning provided in *Shroyer*, particularly in light of the mandatory nature of the signing and recordation requirement in R.C. 305.11, and would therefore affirm the trial court's determination regarding the second assignment of error that the resolutions at issue were defective as a result of the failure to comply with R.C. 305.11.