ADITYANJEE, Appellant,

v.

CASE WESTERN RESERVE UNIVERSITY et al., Appellees.

[Cite as *Adityanjee v. Case W. Res. Univ.*, 156 Ohio App.3d 432, 2004-Ohio-1109.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 83122.

Decided March 11, 2004.

434

Howard V. Mishler Co., L.P.A., and Howard V. Mishler, for appellant.

Taft, Stettinius & Hollister L.L.P., Joel A. Makee, Peter M. Poulos and Colleen G. Treml, for appellees.

---

PATRICIA ANN BLACKMON, Judge.

{¶ 1} Appellant Dr. Adityanjee appeals from the trial court's granting summary judgment in favor of appellees Case Western Reserve University, Dr. Pedro Delgado, and Lindsey Dozanti (where appropriate, referred to jointly as "Case"). Dr. Adityanjee assigns the following errors for our review:

{¶ 2} "I. The trial court erred in granting defendant-appellee's motion for summary judgment as there were several issues of fact upon which reasonable minds could differ which should have precluded the granting of summary judgment under Ohio Civil Rule 56."

{¶ 3} "II. The trial court erred in finding that it was necessary to have an appointment to Case Western Reserve University attached to the complaint as there was no dispute as to the terms and conditions of plaintiff-appellant's appointment as an associate professor. The dispute focused on the defective notice of nonrenewal that was issued to the plaintiff-appellant in June 2001."

{¶ 4} "III. The trial court erred in not finding that Case Western Reserve University had breached plaintiff-appellant Dr. Adityanjee's civil rights pursuant to 42 U.S.C. 1983 and/or 1985."

{¶ 5} "IV. The trial court erred in finding that plaintiff-appellant had not demonstrated a prima facie case couched in the intentional infliction of mental distress."

{¶ 6} "V. The trial court erred in not taking into consideration the fact that defendant Lindsey Dozanti gave input to the Executive Committee as to the

qualifications of plaintiff-appellant as Director of [the] Schizophrenia [program] when she was not a licensed medical doctor."

{¶ 7} "VI. The trial court erred in granting summary judgment in favor of defendant Case Western Reserve University by not taking into consideration that all of plaintiff-appellant Dr. Adityanjee's shortcomings in funding or granting obtention [sic] or publication as principle [sic] investigator were disclosed during the appointment interview process and, therefore, should not have been used to justify plaintiff-appellant's nonrenewal."

{¶ 8} "VII. The trial court erred in not taking into consideration that defendant Pedro Delgado retaliated against the plaintiff-appellant immediately after he filed the grievance challenging the nonrenewal."

{¶ 9} Having reviewed the record and pertinent law, we affirm the judgment of the trial court. The apposite facts follow.

{¶ 10} The record reveals that Dr. Adityanjee, whose national origin is Indian, studied medicine and worked in India, Malaysia, and England until 1991, when he came to America. In 1999, Case gave Dr. Adityanjee a one-year, nontenured faculty appointment in the school of medicine's department of psychiatry. Dr. Adityanjee's duties and responsibilities included teaching residents and medical students, conducting clinical and/or research, obtaining funding, and invoicing for services rendered to outpatients and psychiatric inpatients of Hanna Pavilion. Case renewed the appointment for an additional one-year term from July 1, 2000, to June 30, 2001.

{¶ 11} In September 2000, Case recruited appellee Dr. Pedro Delgado, whose national origin is Cuban, to chair the psychiatry department. According to Dr. Adityanjee, Dr. Delgado took an instant dislike to him because of his national origin and administrative experience being from third-world or undeveloped countries. According to Dr. Adityanjee, in his first meeting with Dr. Delgado, Delgado said, "I heard you are a tough guy." Dr. Adityanjee stated that he was very surprised by this comment and found it demoralizing.[1]

{¶ 12} Dr. Adityanjee claimed that Dr. Delgado discriminated against him by not allowing him to serve on the executive core committee, by moving his clinical schizophrenia program to another location, by wrongfully accusing him of not generating sufficient out-patient funds from his clinical work, and by accusing him of not attending meetings and tape-recording meetings.

{¶ 13} Dr. Adityanjee stated that in June 2001, Dr. Delgado gave him a six-month notice of nonrenewal of his appointment without giving him the customary annual report highlighting the areas needing improvement. Thereafter, in July

---

1. Appellant's Depo. at 149.

2001, Dr. Adityanjee complained to Dean Daniel Ankers about the nonrenewal of his appointment. Dean Ankers investigated the matter, received a written explanation from Dr. Delgado, and determined that there was a legitimate basis for the decision not to renew Dr. Adityanjee's contract.

{¶ 14} Consequently, Dr. Adityanjee filed an administrative grievance with Case's faculty senate office. The hearing was held in October 2001, and both Dr. Adityanjee and Dr. Delgado presented witnesses and arguments before the seven-member faculty senate. According to Dr. Adityanjee, this hearing was unfair because he was not permitted to present all of his witnesses at the hearing, and Lindsey Dozanti was permitted to testify at the hearing regarding his qualifications as director of the schizophrenia program, even though she was not a licensed medical doctor.

{¶ 15} Following the hearing, the faculty grievance committee issued a written report concluding that the decision not to renew Dr. Adityanjee's appointment was not driven by personal animosity, hostility to academic freedom, or any illicit discriminatory motives. However, the committee decided that the notice of nonrenewal was defective because the notice should have been for one year instead of the stated six months. The committee therefore added six months to Dr. Adityanjee's employment.

{¶ 16} Dr. Adityanjee stated that during the pendency of the administrative grievance, Dr. Delgado announced that another doctor had been hired as the director of the schizophrenia program and associate professor. He stated that upon hearing he was being replaced, he became severely depressed but could not seek treatment with any psychiatrist because that would be embarrassing.

{¶ 17} In December 2001, Dr. Adityanjee resigned from Case and took a position with the Veterans Affairs Medical Center in Minneapolis.

{¶ 18} Ultimately, Dr. Adityanjee filed a complaint against appellees Case, Dr. Pedro Delgado, and Lindsey Dozanti, alleging several causes of action, including but not limited to a civil rights cause under Section 1983, Title 42, U.S.Code, intentional infliction of mental distress against the individual defendants, and intentional interference with employment as to the individual defendants.

{¶ 19} In his deposition, Dr. Delgado stated that the psychiatric department had a significant budget deficit when he took over as chairman. He set out to correct this deficit by increasing each faculty member's productivity. He did this by establishing a core executive committee made up of division heads to provide input on the various issues facing the department, and he began meeting with faculty members in the department. According to Dr. Delgado, after reviewing Dr. Adityanjee's performance, he determined that there were serious problems with his productivity. He said that Dr. Adityanjee had not applied for or

received any funding from the National Institute of Health ("NIH") and had not published any papers based on original research results.

{¶ 20} Dr. Delgado stated that in an effort to increase Dr. Adityanjee's productivity, he began meeting with him periodically, and also enlisted the help of other senior faculty members to assist Dr. Adityanjee. However, according to Dr. Delgado, Dr. Adityanjee's performance did not improve despite the assistance; consequently, with the concurrence of the core executive committee, he determined that the department should not renew Dr. Adityanjee's annual faculty appointment.

{¶ 21} Case filed a joint motion for summary judgment, and the trial court granted the motion on all claims. Dr. Adityanjee now appeals from the trial court's grant of summary judgment.

{¶ 22} We consider an appeal from summary judgment under a de novo standard of review.[2] Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.[3] Under Civ.R. 56, summary judgment is appropriate when (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion, which is adverse to the nonmoving party.[4]

{¶ 23} The moving party carries an initial burden of setting forth grounds that demonstrate his or her entitlement to summary judgment.[5] The movant may satisfy this burden with or without supporting affidavits, and must "point to evidentiary materials of the type listed in Civ.R. 56(E)."[6] If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the nonmovant fails to establish the existence of a genuine issue of material fact.[7] In satisfying its burden, the nonmovant "may not rest upon the mere allegations or denials of

2. *Baiko v. Mays* (2000), 140 Ohio App.3d 1, 746 N.E.2d 618, citing *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 30 OBR 78, 506 N.E.2d 212; *Northeast Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.* (1997), 121 Ohio App.3d 188, 699 N.E.2d 534.

3. Id., 121 Ohio App.3d at 192, 699 N.E.2d 534, citing *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 622 N.E.2d 1153.

4. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

5. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264.

6. Id., 75 Ohio St.3d at 292, 662 N.E.2d 264.

7. Id., 75 Ohio St.3d at 293, 662 N.E.2d 264.

his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." [8]

{¶ 24} Rather than accepting either party's allegations as true, or interpreting divergent factual representations as genuine issues of material fact, we review the entire record and determine whether each party met its respective summary judgment burdens.

{¶ 25} In his first assigned error, Dr. Adityanjee argues that Case constructively discharged him.

{¶ 26} The record showed that Dr. Adityanjee voluntarily terminated his position with Case and assumed a position in Minnesota. The following testimony took place:

{¶ 27} "So the position you applied for was both for the VA and for the University of Minnesota?

{¶ 28} "Yes, yes.

{¶ 29} "Okay. And who did you interview with at the University of Minnesota?

{¶ 30} "Dr. Schulz.

{¶ 31} "When did you interview with Dr. Schulz?

{¶ 32} "I don't remember. It was sometime in the year 2001.

{¶ 33} "Okay. Can you say generally if it was in spring or summer or—

{¶ 34} "I think there were two sets of interviews.

{¶ 35} "Okay. And can you recall when those interviews were?

{¶ 36} "I think one was in June and one was right after that.

{¶ 37} "Okay. And that would have been June 2001?

{¶ 38} "Yes.

{¶ 39} "So that would have been prior to the time you received your notice of nonrenewal at the University of Case Western?

{¶ 40} "Yes."

{¶ 41} From his own testimony, Dr. Adityanjee establishes that he actively sought employment and that his explanation for doing so was because this was customary in the profession. He did not offer any evidence that would have been tantamount to a constructive firing on Case's part.

{¶ 42} Courts generally apply an objective test in determining when an employee was constructively discharged, viz., whether the employer's actions

---

8. Civ.R. 56(E); see *Dresher*.

made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign.[9]

{¶ 43} After reviewing the record, we conclude that Dr. Adityanjee failed to establish a cause of action for constructive discharge.

{¶ 44} First, Dr. Adityanjee admitted that he had not published any papers based on original research results during the two years he was at Case and also had not applied for or received any funding from NIH.[10] Case's stated reason for not renewing Dr. Adityanjee's appointment was because of his failed productivity, which included not obtaining funding and failing to publish.

{¶ 45} Second, the record reveals that Dr. Delgado, along with several other senior members of the faculty, reached out to assist Dr. Adityanjee in his efforts to apply and receive funding.[11]

{¶ 46} Third, although Dr. Adityanjee claims that Dr. Delgado discriminated against him by not asking him to join the core executive committee, the record reveals that no one was actually appointed to this body. The core executive committee was essentially an advisory body.

{¶ 47} Fourth, Dr. Adityanjee claimed that he was discriminated against because his office was relocated to the Triangle Building. However, the record reveals that in asking Dr. Adityanjee to move his office, Case was attempting to consolidate the clinical research activities into one location. Additionally, Dr. Calabrese, the person who is considered to be the most productive clinical researcher in an outpatient setting, is located in the Triangle Building.[12] Dr. Adityanjee could have benefited by being in closer proximity to someone as productive as Dr. Calabrese. Accordingly, we overrule Dr. Adityanjee's first assigned error.

{¶ 48} In his second assigned error, Dr. Adityanjee argues that Case breached his contract by not renewing his appointment. All employment in Ohio is considered at-will employment unless contracted for by the parties. An at-will employment relationship is one that either party may terminate for whatever reason and whenever either desires to do so.[13]

---

9. *McCann v. Litton Sys., Inc.* (C.A.5, 1993), 986 F.2d 946, 951; *Stephens v. C.I.T. Group/Equip. Fin., Inc.* (C.A.5, 1992), 955 F.2d 1023, 1027; *Spulak v. K Mart Corp.* (C.A.10, 1990), 894 F.2d 1150, 1154; *Levendos v. Stern Entertainment, Inc.* (C.A.3, 1988), 860 F.2d 1227, 1230–1231.

10. Dr. Adityanjee's Depo. at 198–200.

11. Dr. Adityanjee's Depo. at 221–224.

12. Dr. Delgado's Depo. at 39.

13. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150.

{¶ 49} In the instant case, the record reveals that faculty members who do not have tenure are appointed for a term of one year. The renewal of a faculty appointment is completely discretionary. A faculty member's appointment may not be renewed because of inadequate performance in areas, such as research, publication, and obtaining funding. Dr. Adityanjee admitted that he had not published or applied for or received any funding in the two years he had been at the university. Publishing and obtaining funding are integral parts of the position Dr. Adityanjee held. Consequently, Case had a valid reason not to renew the appointment, because Dr. Adityanjee admittedly failed to fulfill either of these essential duties of the position. Accordingly, we overrule his second assigned error.

{¶ 50} In his third assigned error, Dr. Adityanjee contends that Case violated his First and Fourteenth Amendment rights by not renewing his appointment.

{¶ 51} Most of the protections for individual rights and liberties contained in the United States and Ohio Constitutions apply only to actions of governmental entities; thus, the first inquiry is whether the claimed constitutional deprivation has resulted from the exercise of a right or privilege having its source in state authority.[14] The second inquiry is whether the private party charged with the deprivation can be described as a state actor.[15] In resolving the issue, the following three principles must be considered: "the extent to which the actor relies on governmental assistance and benefits, * * * whether the actor is performing a traditional governmental function, * * * and whether the injury caused is aggravated in a unique way by the incidents of governmental authority."[16]

{¶ 52} At the outset, we note that Dr. Adityanjee agreed that Case Medical School is a private institution.[17] Dr. Adityanjee does not assert or present any evidence that Case relies on governmental assistance and benefits. Much to the contrary, it is undisputed that the medical school receives significant amounts of its funding as a result of the research and publication of its faculty members. Additionally, providing a medical school education is not a traditional government function. Finally, Case's decision not to renew Dr. Adityanjee's appointment was

---

14. *Georgia v. McCollum* (1992), 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33.

15. *McCollum*, supra.

16. *Edmonson v. Leesville Concrete Co.* (1991), 500 U.S. 614, 621–622, 111 S.Ct. 2077, 114 L.Ed.2d 660; see, also, *Lugar v. Edmondson Oil Co.* (1982), 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482.

17. Dr. Adityanjee's Depo. at 364.

not a result of the incident governmental authority but rather his failure to publish, apply for, or receive funding.

{¶ 53} Dr. Adityanjee's third assigned error lacks merit and is overruled.

{¶ 54} In his fourth assigned error, Dr. Adityanjee contends that he established a prima facie case for the intentional infliction of emotional distress.

{¶ 55} A claim for intentional infliction of emotional distress requires plaintiff to show that (1) defendant intended to cause emotional distress, or knew or should have known that actions taken would result in serious emotional distress; (2) defendant's conduct was extreme and outrageous; (3) defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental anguish plaintiff suffered was serious.[18]

{¶ 56} Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" [19]

{¶ 57} Dr. Adityanjee proved no conduct by Case "so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." To the contrary, the evidence showed that Dr. Adityanjee failed to carry out his duties as an associate professor. Dr. Delgado counseled him as to the need to publish, and apply for and receive grants. When he failed to do so, his appointment was not renewed.

{¶ 58} A plaintiff may not sustain a claim for intentional infliction of emotional distress where the defendant does no more than insist upon its legal rights in a permissible way, even if such insistence causes some type of "emotional distress." [20]

. {¶ 59} Dr. Adityanjee produced no evidence that Case had caused emotional distress so serious that "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circum-

---

18. *Pyle v. Pyle* (1983), 11 Ohio App.3d 31, 34, 11 OBR 63, 463 N.E.2d 98.

19. *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 374–375, 6 OBR 421, 453 N.E.2d 666.

20. *Hanly v. Riverside Methodist Hosp.* (1991), 78 Ohio App.3d 73, 603 N.E.2d 1126; see, also, *Schacht v. Ameritrust Co. N.A.* (Mar. 17, 1994), Cuyahoga App. No. 64782, 1994 WL 86229; *Brzozowski v. Stouffer Hotel Co.* (1989), 64 Ohio App.3d 540, 544, 582 N.E.2d 24.

stances."[21] No doubt the criticism of Dr. Adityanjee's professional performance and the nonrenewal of his position may have seemed unfair, and was unpleasant and perhaps even shocking to him. However, criticism and discharge in the workplace are a normal part of our society and less accomplished people are expected to cope effectively with such disappointments.[22]

{¶ 60} Finally, Dr. Adityanjee failed to meet his burden of proof to establish that Case's actions were the proximate cause of any serious psychic injury or ailments. Dr. Adityanjee testified that he was depressed, humiliated, and had poor self-esteem but did not consult a psychiatrist.

{¶ 61} We overrule Dr. Adityanjee's fourth assigned error.

{¶ 62} We decline to address Dr. Adityanjee's fifth, sixth, and seventh assigned errors, because they all deal with Case's decision not to renew his appointment, and we have determined that Case exercised its discretion not to renew his appointment, when he failed to publish or to apply for and receive funding over the two years he was employed.

{¶ 63} The judgment is affirmed.

Judgment affirmed.

MICHAEL J. CORRIGAN, A.J., and FRANK D. CELEBREZZE JR., J., concur.

---

21. *Heiner v. Moretuzzo* (1995), 73 Ohio St.3d 80, 83, 652 N.E.2d 664.

22. *Johnson v. Lakewood Hosp.* (Sept. 4, 1997), Cuyahoga App. Nos. 70943 and 71257, 1997 WL 547968.