JOURNAL ENTRY and OPINION
{¶ 1} Appellant Midas International Corporation ("Midas") appeals the trial court's judgment, which granted summary judgment in favor of appellee Erwin Fischer. Midas assigns the following errors for our review:
"I. The trial court erred in granting appellee's motion for partialsummary judgment by finding that appellee guaranteed only the obligationsof Mariclare, Inc. while trading as Kaplan Auto Parts — 5050 Pearl Rd."
 "II. The trial court erred in granting appellee's motion for partialsummary judgment by finding that the 1968 Guaranty was subsequentlyterminated by a subsequent agreement."
 "III. The trial court erred in finding that there was a material changein either or both the principal debtor (Mariclare, Inc.) and theagreement to which appellee acceded (1967 Warehouse Agreement) to renderappellee's guaranty responsibilities extinct, annihilated and gone."
 "IV. The trial court erred in denying appellant's motion for partialsummary judgment by finding that the 1968 guaranty is not enforceableagainst appellee for the payment of Mariclare, Inc.'s current accountbalance due appellant."
 {¶ 2} Having reviewed the record and requisite law, we affirm the decision of the trial court. The apposite facts follow.
 {¶ 3} On May 29, 1967, Midas entered into a Warehouse Agreement with Kaplan Auto Parts. The Agreement provided that Kaplan would provide local shipping service and warehousing facilities for certain Midas automotive products and parts. A supplement to the Agreement provided that Kaplan would purchase certain automotive parts from Midas for which it would be invoiced, subject to current discounts and payment terms.
 {¶ 4} On December 20, 1968, Erwin Fischer signed a Guaranty in which he agreed to be jointly and severally liable with the named principal debtor for any indebtedness that it may have to Midas. The named principal debtor on the Guaranty was "Mariclare, Inc. T/A Kaplan Auto Parts — 5050 Pearl Rd., Cleveland, Ohio." The Guaranty contained a warrant of attorney authorizing a cognovit note judgment against the Guarantor.
 {¶ 5} On March 5, 1973, the parties to the Agreement added a supplement to the Agreement, which changed the name "Kaplan Auto Parts" to "Mari Clare, Inc." In this supplement, Midas and "Mari Clare, Inc." agreed that all terms and conditions of the original Warehouse Agreement would continue in full force and effect, except that the name of the Warehouse and the name of the contracting party would be changed from the former corporate name, Kaplan Auto Parts to "Mari Clare, Inc."
 {¶ 6} On January 2, 1975, Midas and the contracting party, now identified as "Mariclare, Inc.," agreed to terminate the May 29, 1967 Warehouse Agreement, effective January 1, 1975.[1] The Letter of Agreement states in pertinent part, "It is mutually agreed that the `Warehouse Agreement' between you and Midas, dated May 29, 1967 shall be terminated as of January 1, 1975."[2] The parties further agreed that Midas would extend credit to Mariclare in the amount of $200,000 for the purchase of Midas products. This amount was referred to as a "Ledger Balance." In the new agreement, the parties further set forth various payment terms and conditions for the Ledger Balance as well as for purchases in excess of the Ledger Balance, including penalties and interest to be incurred upon default or termination of the agreement. Midas also required that security agreements and financing statements be produced to secure payment of the Ledger Balance.
 {¶ 7} The January 1975 Agreement originally contained a paragraph that required Erwin Fischer to guarantee prompt and full payment of any sums due Midas by Mariclare, Inc. However, subsequent negotiations resulted in the deletion of this particular term and Erwin Fischer was not required to personally guarantee the debts of Mariclare, Inc. The final version of the agreement indicates the provision requiring Fischer to guarantee the debt was crossed out and initialed by the Vice President of Midas. Midas also confirmed by letter dated June 13, 1975, its agreement that Fischer would not be required to guarantee sums due Midas by Mariclare, Inc.: "Here's your copy of your Letter of Agreement in connection with our Ledger Balance Arrangement. Please note, I have inserted the January 2, 1975 date and also initialed the deletions on page 3 and 4 [which dealt with the Guaranty provision]."
 {¶ 8} On September 23, 2003, Midas filed a complaint for a cognovit note judgment on the 1968 Guaranty by Fischer in the amount of $248,271.55.[3] Three days later, the trial court entered judgment on the note in the requested amount. On October 10, 2003, Fischer filed a motion to vacate the judgment, which Midas opposed. The trial court granted the motion to vacate the judgment and set the matter for a bench trial.
 {¶ 9} Both parties filed cross-motions for summary judgment. The trial court granted summary judgment in favor of Fischer without opinion. Midas now appeals.
 {¶ 10} We find Midas' first and second assigned errors are dispositive of this appeal; therefore, we will address them together. Midas argues that the 1968 Guaranty secured the debts of Mariclare, Inc. and the 1975 agreement did not terminate Fischer's guarantee contained in the 1968 Guaranty. We disagree.
 {¶ 11} We review an appeal from summary judgment under a de novo standard of review.[4] Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.[5] Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can reach only one conclusion which is adverse to the nonmoving party.[6]
 {¶ 12} The moving party carries an initial burden of setting forth specific facts which demonstrate his or her entitlement to summary judgment.[7] If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the non-movant fails to establish the existence of a genuine issue of material fact.[8]
 {¶ 13} The language contained in the 1968 Guaranty states in pertinent part:
"It [the Guaranty] shall be binding on the undersigned, jointly andseverally, and upon the heirs, executors and administrators of theundersigned, and each of them respectively, and shall continue in fullforce and effect until notice of termination is given and received byregistered mail, and all of said indebtedness, liabilities or obligationscreated or assumed are fully paid, performed and discharged. * * *."
 {¶ 14} The evidence indicates that the conditions of termination were met. In 1975, the parties agreed to terminate the 1967 Warehouse Agreement. The Letter of Agreement states, "It is mutually agreed that the `Warehouse Agreement' between you and Midas, dated May 29, 1967 shall be terminated as of January 1, 1975."[9]
 {¶ 15} Midas contends that the Guaranty is separate from the 1967 Warehouse Agreement. However, at the time the Guaranty was entered into, the Warehouse Agreement was the only agreement that existed between Midas and "Mariclare, Inc. T/A Kaplan Auto Parts," which is the named principal debtor in the Guaranty.
 {¶ 16} Moreover, a Guaranty cannot guarantee a future debt by an entity that does not exist. When Fischer agreed to the 1968 Guaranty, "Mariclare, Inc." did not exist. The evidence indicates the name "Mariclare T/A Kaplan Auto Parts" was later changed to "Mariclare." Although Midas argues this change was "superfluous," "a guarantor, like a surety, is bound only by the precise words of his contract."[10] In fact, "if a contract is ambiguous so that it may either extend or limit a guarantor's obligation, such contract should be construed to limit the obligation."[11] Therefore, given the evidence, we conclude the 1968 Guaranty only guaranteed the debts incurred by "Mariclare T/A Kaplan Auto Parts" under the 1967 Warehouse Agreement. Thus, the termination of the 1967 Warehouse Agreement terminated the 1968 Guaranty.
 {¶ 17} Further, when drafting the new agreement, Midas had originally included a Guaranty by Fischer. However, when Fischer objected to the inclusion of the Guaranty, subsequent negotiations occurred. As a result, the paragraph requiring the Guaranty was crossed out. The deletion was initialed by Midas. Midas confirmed it agreed to the elimination of the Guaranty by stating in a letter that the paragraph had been deleted.
 {¶ 18} "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement."[12] A court construes a contract against the party who drafted it.[13] It is noteworthy that Midas did not address the 1968 Guaranty when it deleted the proposed Guaranty in the 1975 Agreement. If the intent was that the new agreement would not terminate the 1968 Guaranty, it would have been prudent for Midas to include that term in the new agreement. Accordingly, we overrule Midas' first and second assigned errors.
 {¶ 19} Because the first and second assigned errors are dispositive of the appeal, the remaining assigned errors are moot and need not be addressed.[14]
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, J., and Cooney, J., Concur.
[1] No evidence was presented regarding when "Mari Clare, Inc." changed its name to "Mariclare, Inc."
[2] January 2, 1975 Letter of Agreement, page one.
[3] At oral argument, Midas' attorney clarified that this amount represented a debt incurred between 2001 and 2003.
[4] Baiko v. Mays (2000), 140 Ohio App.3d 1, citing Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35; Northeast Ohio Apt. Assn.v. Cuyahoga Cty. Bd. of Commrs. (1997), 121 Ohio App.3d 188.
[5] Id. at 192, citing Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704.
[6] Temple v. Wean United, Inc. (1997), 50 Ohio St.2d 317, 327.
[7] Dresher v. Burt, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107.
[8] Id. at 293.
[9] January 2, 1975 Letter of Agreement, page one.
[10] G.F. Business Equip., Inc. v. Liston (1982), 7 Ohio App.3d 223,224, quoting Morgan v. Boyer (1883), 39 Ohio St. 324.
[11] Yearling Properties, Inc. v. Tedder (1988), 53 Ohio App.3d 52,54.
[12] Kelly v. Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus.
[13] Graham v. Drydock Coal Co., 76 Ohio St.3d 311, 314, 1996-Ohio-393.
[14] App.R. 12(A)(1)(c).