BAIKO, Appellant,

v.

MAYS et al., Appellees.

[Cite as *Baiko v. Mays* (2000), 140 Ohio App.3d 1.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 74905.

Decided April 13, 2000.

*Charles H. Manning*; *Shane, Shane & Henderson* and *Louis G. Henderson*; *Robert L. Tobik*, for appellant.

*Terry H. Gilbert*, for appellees.

*McNeal, Schick Archibald & Biro* and *John C. Cubar*, for appellee Gerald M. Appel.

*Gallagher, Sharp, Fulton & Norman, Alton L. Stephens, Timothy T. Brick* and *Alan M. Petrov,* for appellees Dyson, Schmidlin & Foulds and Raymond J. Schmidlin.

*Daniel J. Igoe,* for appellee Management for Professionals, Inc.

---

PATRICIA ANN BLACKMON, Judge.

In this appeal, the issue is whether a plaintiff in a malpractice action against both his lawyer and accountant is required as a matter of law to produce expert testimony on the standard of care to counter their denial that their action did not fall below the standard of care for their professions. Plaintiff appellant, Kenneth L. Baiko, argues that his case is different from the usual competency malpractice actions, which require expert testimony. He argues that he hired these professionals because of his suspicion that Dr. David Mays's dental practice might not be as lucrative as Mays represented. Thus, he required his lawyer and accountant to obtain the patient dental records and files because of his suspicion. This, he argues, is within the general knowledge and understanding of a lay jury, which negates the requirement of expert testimony.

The trial court noted that defendants-appellees, Gerald M. Appel, Gerald M. Appel C.P.A., Inc., Raymond J. Schmidlin, and Dyson, Schmidlin & Foulds Co., L.P.A., presented affidavits averring that their conduct did not fall below the standard of care required in their professions. Consequently, the trial court, as a matter of law, granted appellees' motion for summary judgment because appellant failed to produce an expert on this issue.

Appellant assigns the following errors for our review:

"I. The trial court erred [in] granting defendants' motion for summary judgment in professional malpractice action based on plaintiff's failure to provide expert testimony where claimed breach of duty was within the common understanding of laymen on the jury.

"II. The trial court erred in granting the motion for summary judgment of defendants Raymond J. Schmidlin and Dyson, Schmidlin & Foulds Co., L.P.A. where defendant–appellee Schmidlin, in deposition testimony incorporated into plaintiff's brief in opposition, contradicted his expert affidavit as to the duty owed a client in the purchase and sale of a dental practice and provided expert testimony in support of plaintiff–appellant's position.

"III. The trial court erred in granting defendants' motion for summary judgment and the issue of the duty owed by a professional to his client should have been submitted to the jury at trial where sufficient issues of fact relating to

the client/professional relationship between plaintiff and defendants were raised to present issues of professional duty.

"IV. The trial court erred in failing to grant plaintiff's motion to reconsider grant of summary judgment in favor of defendants Raymond J. Schmidlin and Dyson, Schmidlin & Foulds Co., L.P.A. where plaintiff submitted an expert affidavit in support of his motion."

Having reviewed the parties' argument and the record, we reverse and remand this case for trial. The apposite facts follow.

Appellant, on the advice of appellee-lawyer and appellee-accountant, purchased Dr. David Mays's dental practice. Subsequently, the Ohio State Auditor at the request of the county commissioners, conducted a special audit of the dental practice. The audit revealed that the practice, which appellant bought for $450,000, consisted of a dental practice enveloped in welfare fraud. The dental practice did not have the number of patients represented in the purchase agreement. In fact, the patients did not exist, and the county had been billed for work not performed. From January 1, 1987 to July 31, 1990, Mays had billed the county for services to 7,159 patients. Appellant learned after the audit that four hundred six files existed with ninety-three patients actually receiving services.

To facilitate the purchase of Mays's practice, appellant hired appellee-lawyer and appellee-accountant. Appellant sued both in connection with the sale because neither had obtained or reviewed the patient files and financial books. Appellees moved for summary judgment and set out specific affidavits setting forth their duties and responsibilities to the appellant.

Appellee-lawyer's affidavit averred that his role was to prepare documents for the purchase and aid in the negotiation. Appellee-lawyer stated:

"It is not the custom, practice, or standard for an attorney representing the purchaser of a dental practice to review financial or dental records for fraudulent irregularities or otherwise conduct due diligence with respect to the purchase. This is particularly true when the client has retained an accountant to assist with the transaction.

"Pursuant to the terms of the April 19, 1990 purchase agreement, the purchase of the dental practice was to close on an agreed upon future date. The parties set to conclude the transaction on May 2, 1990 in the office of Gerald Appel. I was involved in this meeting, and at its conclusion, it was my understanding that the transaction had been satisfactorily concluded. I subsequently learned that plaintiff subsequently negotiated significant changes to the original April 19, 1990 agreement directly with Dr. Mays' attorney, Timothy Bender. A letter dated May 2, 1990 from plaintiff to Mr. Bender sets forth a number of substantive changes to the original agreement required by plaintiff's lender. These changes

were incorporated into a new contract identified as the 'final purchase sales agreement' which is dated May 2, 1990.

"I did not prepare or review the 'final purchase sales agreement' prior to its execution, and was not present when it was signed. I did not learn of plaintiff's direct dealings with Mr. Bender or the existence of the new contract until after the fact. I was not asked and did not offer any advice to plaintiff with respect to the new contract or his direct dealings with Mr. Bender."

Appellee-accountant averred in his affidavit that "it was the practice and custom of certified public accountants to rely upon the financial statements and tax returns prepared by outside accountants and it was not accepted practice to review the actual accounting records of a dental practice." Furthermore, he averred:

"My agreement with Kenneth L. Baiko, D.D.S. to perform services consisted of the following:

"(a) Assist Kenneth L. Baiko, D.D.S. in preparing loan applications.

"(b) Prepare the compiled pro forma statements.

"(c) Advise Kenneth L. Baiko, D.D.S. on tax matters of contract and operations after purchase.

"(d) Make application on behalf of Kenneth L. Baiko, D.D.S. for corporate tax numbers.

"(e) Be the accountant for Kenneth L. Baiko, D.D.S. after the dental practice was purchased from David W. Mays, D.D.S.

"(f) Assist in setting up the accounting records and accounting systems after the purchase of the dental practice.

"At no time did Kenneth L. Baiko, D.D.S. retain me to investigate and perform audit of the dental records of the dental practice of David W. Mays, D.D.S., Inc. As a certified public accountant, I do not have the expertise that would be necessary to do an audit of the dental records, coupled with the fact that even if the audit process [were] undertaken, it would take months to complete.

"My last contact with Kenneth L. Baiko, D.D.S. occurred on May 8, 1990, when I telephoned him in order to make arrangements to review his accounting records, make necessary adjustments to accounting practices, along with offering accounting suggestions to Kenneth L. Baiko, D.D.S. During this conversation, Kenneth L. Baiko, D.D.S. advised me the dental practice was going well, the volume of patients was in fact present, and that the purchase of the dental practice of David W. Mays D.D.S., Inc. looked like a good deal."

Appellant averred that he expected even in the face of Mays's road blocks for appellees to obtain and have access to the patients' records to ascertain the viability of the dental practice. Appellant avers that he and appellees were suspicious of Dr. Mays because he wanted to sell such a lucrative dental practice at such a young age.

Appellant made the following representation in his affidavit:

"Prior to my signing the purchase agreement, I met with Attorney Schmidlin and Gerald Appel and was informed by Gerald Appel that he had not gotten in to the office of Dr. David W. Mays, D.D.S. to look at his patient records or patient folders. I informed Gerald Appel that the basis for his recommendation of signing the purchase agreement, the mere inspection of financial statements, was wholly inadequate justification for proceeding with the purchase. I insisted that a thorough inspection of the patient records in combination with the financial statements was the only acceptable basis on which to make the final purchase decision. I was told that everything was okay and therefore I signed the purchase agreement.

"On May 2, 1990, I met with Attorney Schmidlin to revise the final drafts of the purchase documents. At that time, I was informed that Gerald Appel had not been in to inspect the patient records of Dr. David W. Mays' D.D.S. practice. Upon voicing my intention not to proceed until the task was completed, I was told by Attorney Schmidlin that the process was too far along for me to back out."

The trial court issued the following order in response to appellees' motion for summary judgment and appellant's opposition:

"Defendants Gerald M. Appel and Gerald M. Appel, C.P.A., Inc.'s motion for summary judgment is granted. Defendants Raymond J. Schmidlin and [Dyson] Schmidlin & Foulds Co., L.P.A.'s motion for summary judgment is granted. Appellant failed to provide any expert testimony in opposition to defendants' affidavits. See *Bloom v. Dieckmann*, 11 Ohio App.3d 202 [11 OBR 298, 464 N.E.2d 187] (1983), *Crowther v. Seeley* (1991), [Cuyahoga App.] No. 57864 [1991 WL 6473], *Georgeoff v. O'Brian [O'Brien]* (1995), 105 Ohio App.3d 373 [663 N.E.2d 1348], [discretionary appeal not allowed, (1995), 74 Ohio St.3d 1476, 657 N.E.2d 783]."

Appellant's first appeal to this court was dismissed for lack of a final appealable order. After the case was returned to the trial court from this court, appellant filed a motion for reconsideration. Attached to the motion was Susan O. Scheutzow's expert affidavit. Attorney Scheutzow averred that in the sale and purchase of a health care practice, the lawyer's duty owed to his client is due diligence, which means the lawyer must review the financial books and patient

records before closing to protect the client's interest. The trial court denied the motion to reconsider. This appeal followed.

We will address appellant's first and fourth assigned errors, in that order. Because we conclude that an expert is not needed in this case, we find that the remaining assigned errors are moot.

At the outset, we feel compelled to point out that this case is peculiar to its own set of facts, and we agree with appellant that this case is unlike the traditional competency malpractice actions.

The standard of review in this case is *de novo*. We review the record the same as the trial court in the light most favorable to the nonmovant, who in this case is appellant. See *Smiddy v. The Wedding Party* (1987), 30 Ohio St.3d 35, 36, 30 OBR 78, 78–79, 506 N.E.2d 212, 215. Appellant's case against his attorney and accountant in the purchase of a dental practice turns on appellant's position that he and his advisors were suspicious that Mays at such a young age would sell a lucrative practice. Because of this suspicion, appellant insisted that appellees review the patient files. Appellant argues that had they fulfilled this obligation, they would have discovered that Mays's dental practice was a fraud. Instead, he claims that appellees failed and that at the sale's closing, he was told by appellee-lawyer that it was too late to rescind the contract. On the basis of these allegations, viewed in the light most favorable to appellant, summary judgment as a matter of law is unwarranted. See *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, and *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 674 N.E.2d 1164.

Historically, the Ohio Supreme Court has held that expert opinions are not required when the conduct at issue is within the jury's general experience and knowledge. *Jones v. Hawkes Hosp. of Mt. Carmel* (1964), 175 Ohio St. 503, 506–507, 26 O.O.2d 170, 172–173, 196 N.E.2d 592, 594–595; *McInnis v. Hyatt Legal Clinics* (1984), 10 Ohio St.3d 112, 113, 10 OBR 437, 438, 461 N.E.2d 1295, 1297. Appellate courts have followed this precedent and maintained that as to establishing the standard of care, expert testimony or testimony in general may not be needed when the conduct is all within a lay jury's understanding. *Riley v. Clark* (Nov. 10, 1999), Scioto App. No. 98CA2629, unreported, 1999 WL 1052504, citing *Kemper v. Builder's Square, Inc.* (1996), 109 Ohio App.3d 127, 132–133, 671 N.E.2d 1104, 1106–1108, In *Riley*, the court went further and stated that "[e]ven in medical and legal malpractice cases, where most factors relating to the standard of care are beyond the experience and understanding of a lay jury, affirmative evidence of the standard of care is not necessary if the relevant factors are within the jury's understanding." *Id.*

The trial court, relying on specific cases, held that when appellees averred that their conduct was within the standard required of their professions that

appellant had a reciprocal burden of producing evidence on this issue. The trial court concluded that lacking counter affidavits on the issue, appellant's case, as a matter of law, was fatally flawed.

Appellant, however, did present his own affidavit where he averred that this case is different on the facts. He was engaged to buy a dental practice that on its face seemed too good to be true. He employed two professionals to determine if his suspicions were correct. He asked both his lawyer and his accountant to obtain the patient files and review them. His conclusion is that had they complied with his request, they would have been able to properly advise him because the dental practice was a fraud.

Appellant argues and we agree that this case is within the ordinary understanding of a lay jury. Here, the facts are not that complicated. Appellees will argue that they did what was required of them and appellant will argue that they did not based on his oral engagement of their service. Because the appellees do not have written letters of engagement of services, this case should properly go to the jury to resolve the factual disputes. Accordingly, the facts are not so one-sided that appellees as a matter of law should prevail. See *Turner v. Turner* (1993), 67 Ohio St.3d 337, 617 N.E.2d 1123.

The trial court's reliance on *Crowther–Bloom–O'Brien* in this case on these facts is misplaced. We, of course, agree with the trial court that ordinarily on matters of competency counter expert affidavits are required. However, in *Crowther*, this court pointed out that plaintiff had made general allegations and defendants' affidavits averred that they had complied with the standard of care required of them as lawyers. Crowther did not reciprocate or counter with his own expert. However, this court pointed out that Crowther also had failed to set forth specific facts indicating triable issues. We conclude that although *Crowther* states that an expert affidavit was needed, it seems to us that had Crowther presented specific facts, he might have survived summary judgment. We draw this conclusion because of this court's statement that Crowther's allegations were conclusory and not specific. Here, appellant presented an affidavit that averred that his professional engagement of appellees was for a specific purpose, to learn as much about the business as possible. Appellees do not deny this representation. Consequently, we conclude that this case is different from *Crowther*.

Besides, the *Bloom* case follows the Ohio Supreme Court's ruling in *McInnis*. In *McInnis* as in *Bloom* the rule is that expert testimony is required unless the issue or conduct is within the general knowledge and understanding of a lay jury. *McInnis*, 10 Ohio St.3d at 113, 10 OBR at 438, 461 N.E.2d at 1297. In *Bloom*, the issue was strictly one of competency. The appellant in *Bloom* argued his attorney was incompetent and the attorney said he was not. The *Bloom* court held that expert evidence is required in a legal malpractice case to establish the

attorney's breach except where the conduct is so obvious that an ordinary lay jury will be able to understand. We believe *Bloom* is consistent with our ruling herein.

In *O'Brien*, the facts were particularly complicated and the court held that an expert was needed. In *O'Brien*, the case involved immunity issues and plea bargaining in a criminal case. The court held that factors to be considered in a plea bargaining case may not be within the common knowledge and experience of a lay jury. *O'Brien* is specific to its facts as is this case. Accordingly, we conclude that appellant's first assigned error is well taken.

Also, appellant's fourth assigned error is well taken. The trial court should have considered the affidavit of appellant's expert Susan O. Scheutzow. We agree that a motion for reconsideration after final judgment is a nullity. See *Pitts v. Ohio Dept. of Transp.* (1981), 67 Ohio St.2d 378, 21 O.O.3d 238, 423 N.E.2d 1105. However, in this case the first appeal was not a final order and was returned to the trial court. At that time, appellant moved to reconsider and requested that the affidavit of Attorney Susan O. Scheutzow be considered. Under these circumstances, it would appear that the affidavit was properly before the trial court.

*Judgment reversed*
*and cause remanded.*

PATTON, J., concurs.

KARPINSKI, P.J., dissents.

KARPINSKI, Presiding Judge, dissenting.

I respectfully dissent from the majority opinion. While there may be instances in which an expert might not be necessary in a professional negligence and/or malpractice claim, I do not agree that this case is such an exception.

I begin by acknowledging there is clear disagreement on crucial facts, that is, whether Baiko expressly asked Schmidlin and Appel for certain professional services, for example, whether Baiko requested an actual review of the patient files. Whatever that disagreement, however, the testimony of an expert is needed to explain (1) the accepted standards of performance for each profession, (2) whether Appel and Schmidlin failed to conform to that standard, and (3) whether that alleged failure proximately caused damages. See *Georgeoff v. O'Brien* (1995), 105 Ohio App.3d 373, 663 N.E.2d 1348; *Hirschberger v. Silverman* (1992), 80 Ohio App.3d 532, 609 N.E.2d 1301; *Bloom v. Dieckmann* (1983), 11 Ohio App.3d 202, 11 OBR 298, 464 N.E.2d 187.

Expert testimony is not required, however, if the professional misconduct is so obvious that it is within the ordinary knowledge and experience of laypersons to understand. The trial court determined that expert testimony was required, however, and I agree.

The degree to which an accountant and attorney must investigate a business about to be purchased is not within a layperson's experience. Nor does a layperson know whether it is an accepted practice for an accountant to rely upon financial statements and tax returns prepared by another accountant.

Baiko claims to have expressly asked that Appel review the patients' files. Even if that request was made—and Appel denies it was—the testimony of an expert would be needed to explain the acceptable scope of an accountant's services, as well as the duty of a professional in responding to such a request.

The majority cautiously summarizes Baiko as averring that he engaged appellees "for a specific purpose, to learn as much about the business as possible" and that appellees do not deny this representation. On the contrary, appellees vigorously deny what Baiko claims is the scope of their duty in learning "as much about the business as possible." The definition of that scope is precisely what an expert testifies about.

Similarly, the standard of care for attorneys participating in the sale of a dental practice is not so obvious or well known as to be within the common knowledge of a layperson. This duty is even less obvious when an attorney's client has retained an accountant.

In addition to the necessity of providing testimony by an expert on the duties of professionals, there is also a need to submit evidence showing that the investigation that Baiko allegedly requested and/or Appel and Schmidlin had a duty to conduct would have uncovered Mays's fraud. In other words, Baiko had to show that if Appel or Schmidlin had reviewed Mays's financial and patient records, each would have discovered that Mays was fraudulently billing for services that had not been performed on nonexistent patients. Such evidence would have to meet the standard of proximate cause to a reasonable certainty. Baiko failed to produce this evidence. Baiko's failure to oppose Appel's and Schmidlin's motions with such competent evidence is fatal to his claim. Thus, even if Baiko did not need to produce an expert, his failure to provide evidence establishing proximate causation was grounds to grant defendants' motion for summary judgment.

I would therefore overrule Baiko's assignments of error and affirm the judgment.