OPINION
Plaintiff-appellant John Perotti appeals the decision of the Mahoning County Common Pleas Court which granted summary judgment in favor of defendant-appellee Attorney David Beck. We are called upon to decide whether the allegations in this legal malpractice case are within the common and ordinary understanding of jurors or whether the plaintiff had the obligation to submit an expert opinion in response to the defendant-attorney's expert affidavit and motion for summary judgment. For the following reasons, summary judgment is affirmed in part, reversed in part and remanded.
 STATEMENT OF FACTS
Mr. Perotti was originally imprisoned for an aggravated robbery that occurred in Cuyahoga County. While imprisoned in Scioto County, he was convicted for the aggravated assault of a prison guard in 1985. In 1989, he was accused of stabbing a fellow inmate and was convicted of felonious assault.
On August 13, 1999, Mr. Perotti filed a legal malpractice action against Attorney Beck. His complaint alleged that he retained Attorney Beck in 1998 for $2,000. He states that Attorney Beck was to do the following: speak to the prosecutor in Scioto County and ensure that the state would not object to a motion for conditional probation/judicial release; file that motion; obtain an affidavit from the felonious assault victim who wanted to recant his prior testimony and declare that he did not believe it was appellant who stabbed him; and file a motion with the recantation affidavit attached asking for a new trial in the felonious assault case.
Mr. Perotti's complaint accuses Attorney Beck of fraudulently stating that the prosecutor would not object to judicial release, when in fact he did object. He notes that the statutes did not allow for release since he used a weapon and opines that his only chance for release was if the prosecutor did not object. Thus, he claims fraud in misinforming the client, failure to properly apply the law, and error in choice of procedure. He also complains that Attorney Beck failed to file a motion for a new trial. Attached to Mr. Perotti's complaint are copies of the various correspondence between himself and Attorney Beck over the course of the representation.[1]
In his answer, Attorney Beck admitted that he "represented Mr. Perotti in performing certain legal services" regarding Mr. Perotti's criminal case, and he denied all other allegations. Shortly thereafter, Attorney Beck filed a motion for summary judgment. The motion contends that Mr. Perotti must set forth expert opinion to establish his claims of legal malpractice. Attached to this motion is Attorney Beck's affidavit, which states that he is licensed to practice law in Ohio. In the affidavit, he renders his opinion that he did not commit malpractice or professional negligence which caused injury to Mr. Perotti and that, within a reasonable degree of legal certainty, no malpractice or professional negligence was committed during the course of representation.
Mr. Perotti responded by stating that there was a genuine issue of material fact. He submitted his own affidavit which states that he plainly established malpractice due to the fact that the relevant statutes make him ineligible for probation. However, he admits that he knew he was ineligible and advised Attorney Beck that the only way he could receive release was with the cooperation of the state due to a "grey area in the law." He states that Attorney Beck told him that he spoke with the prosecutor and that the prosecutor would not object to a motion for probation or judicial release. He then claims that this was a lie because the prosecutor did object. Finally, his affidavit declares that Attorney Beck failed to file the motion for a new trial and the recantation affidavit. In support of his case, Mr. Perotti also filed the affidavit of his fiancee, Lucy Gordon, who contacted Attorney Beck on Mr. Perotti's behalf and listened in on conference calls. Her affidavit states that Attorney Beck told them that the prosecutor would not object to probation "if Beck found the legal avenue." The court granted summary judgment in favor of Attorney Beck, and appellant filed the within timely appeal.
 ASSIGNMENT OF ERROR SUBASSIGNMENTS
On appeal, Mr. Perotti sets forth the following assignment of error, which is divided into three subassignments:
 "SUMMARY JUDGMENT WAS NOT APPROPRIATE WHEN THEIR (sic) WERE GENUINE ISSUES OF MATERIAL FACT IN DISPUTE AND A PRIMA FACIE CASE OF MALPRACTICE WHEN:
 A. The prevailing case law from the Ohio Supreme Court does not allow probation to a repeat, dangerous offender, whose crime involved a weapon and carried a term of actual incarceration;
 B. Mr. Beck's fraudulent representation that he discussed probation with Mr. Grimshaw is another material fact in dispute precluding summary judgment.
 C. Expert testimony is not required in the summary judgment stage when the malpractice lies within the common knowledge of laypersons."
Mr. Perotti's claims of malpractice revolve around two issues, the motion for judicial release and the failure to file a motion for new trial. All three of the preceding subassignments of error relate to the issues surrounding the motion for judicial release. Only the third subassignment is pertinent to the failure to filed a motion for a new trial. Thus, we shall divide our analysis along the lines of the two determinative claims of malpractice, but first, we shall set forth the law regarding summary judgment and legal malpractice suits.
 LAW ON SUMMARY JUDGMENT
In seeking summary judgment, the movant has the initial burden of identifying the portions of the record, such as depositions or affidavits, that demonstrate the absence of a genuine issue for trial.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The burden then shifts to the nonmovant to demonstrate through affidavits, depositions, answers to interrogatories, or other documents listed in Civ.R. 56(C) that there exists a genuine issue of material fact. Id. A trial court must award summary judgment with caution, as it may not be granted unless reasonable minds can only come to a conclusion that is adverse to the nonmovant. Civ.R. 56(C). In reviewing the grant of summary judgment, this court applies a de novo standard of review. Nationwide Mut. Fire Ins. Co. v.Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108.
 LAW ON LEGAL MALPRACTICE
A legal malpractice action may be based on negligence, breach of contract, or both. Rumley v. Buckingham, Doolittle Burroughs (1998),129 Ohio App.3d 638, quoting Richardson v. Doe (1964), 176 Ohio St. 370,372. A legal malpractice claim contains three elements: (1) an attorney-client relationship which gives rise to a duty; (2) a breach of that duty; and (3) damages proximately caused by the breach. Krahn v.Kinney (1989), 43 Ohio St.3d 103. Generally, expert testimony is required to support a claim of attorney malpractice. McInnis v. Hyatt LegalClinics (1984), 10 Ohio St.3d 112, 113. Hence, if the attorney-defendant files an expert affidavit opining that there was no breach of duty and simultaneously moves for summary judgment due to the lack of an expert opinion concerning a breach of the standard of professional performance, then the plaintiff must proffer an opposing expert opinion in support of his claim that a breach occurred. See Georgeoff v. O'Brien (1995),105 Ohio App.3d 373, 377.
However, there is an exception to the plaintiff's obligation to produce an expert opinion in support of his claim. The Ohio Supreme Court has held that on certain limited claims of legal malpractice, the plaintiff need not submit an expert opinion if "the claimed breach of professional duty is within the common understanding of the laymen on the jury."McInnis, 10 Ohio St.3d at 113. In McInnis, the client instructed his attorney that his pending divorce action must not be published as his small-town customers believed that he was married to his housemate. When the attorney could not find the estranged wife, he issued service by publication without first consulting with his client. The Supreme Court determined that this breach of duty was within the common understanding of the jury. Id. Besides this ordinary understanding of the jury exception, other courts have added another exception to the expert testimony requirement where the breach is so obvious that it may be determined as a matter of law. See, e.g., Georgeoff,105 Ohio App.3d at 377; Bloom v. Dieckmann (1983), 11 Ohio App.3d 202, 203.
Mr. Perotti first suggests that Attorney Beck's submission of his own affidavit as an expert opinion is unworthy of credibility. However, this court has previously upheld such a practice. Nuckols v. Kapp (Mar. 30, 1999), Columbiana App. No. 97CO6, unreported. In that case, we pointed out that a defendant in a legal malpractice action would possess the required skill and knowledge to testify as to whether he met the standard of case applicable to the client and that an independent expert is not required to defend a malpractice action. Id. at 5. Hence, this preliminary argument is without merit. We thus turn to Mr. Perotti's main argument that the breaches of duty outlined in his complaint are within the common and ordinary understanding of jurors.
 ANALYSIS: MOTION FOR CONDITIONAL PROBATION
As aforementioned, as relevant to the issue of the motion for conditional probation, Mr. Perotti's complaint sets forth allegations of failing to properly apply the law, erring in the choice of procedure, and fraudulently representing that the prosecutor would not object. In the answers to interrogatories, Attorney Beck admits that he told Mr. Perotti that his chances for judicial release would increase if the prosecutor would not object; however, he denies telling Mr. Perotti that the prosecutor would not object. At first glance, there appears to be a genuine issue of material fact on whether Attorney Beck told Mr. Perotti that the prosecutor said he would not object to judicial release.
Nevertheless, Mr. Perotti submitted the affidavit of his fiancee, Ms. Gordon, in support of his opposition to summary judgment. Apparently, Ms. Gordon acted as a message carrier between Mr. Perotti and Attorney Beck; she also listened in on teleconferences between these parties. Her affidavit specifically states that Attorney Beck informed them that the prosecutor would not oppose Mr. Perotti's release on conditional probation "if Beck found the legal avenue."
According to Mr. Perotti's own arguments, there existed no legal avenue for this type of release, except possibly if the prosecutor failed to object which, he reasoned, would cause the court to notice that appellant is not eligible for judicial release. Accordingly, it appears that this affidavit submitted by Mr. Perotti destroyed any existing issue of fact as to whether Attorney Beck unequivocally told Mr. Perotti that the prosecutor would not object.
Regardless, this argument revolves around his indirect allegation that, in the absence of a guarantee that the prosecutor would not object, a motion for judicial release should not have been filed. As stated above, Mr Perotti believes that Attorney Beck utilized the wrong procedure and failed to properly apply the law regarding eligibility. These are arguments that are not within the common understanding and experience of jurors. See, e.g., Georgeoff, 105 Ohio App.3d at 378
(holding that the factors to be considered in the negotiation and acceptance of a plea agreement and the exclusion of immunity language from that agreement are not commonly within the knowledge of laymen). As will be seen by comparing the present issue to the one addressed infra, there is a difference between the complex question of whether an attorney should have strategically filed a certain motion in the general course of representation and the simple question of whether an attorney was hired to file a motion, accepted payment therefor, but failed to render the service.
Mr. Perotti acknowledges that he knew before retaining Attorney Beck that he was not eligible for probation, and yet, he still retained him to attempt to get around any statutory barriers by talking the prosecutor out of objecting and probably hoping that neither the prosecutor nor the court would realize any issues of ineligibility. Notably, at one point, Mr. Perotti himself states that his eligibility for release was "a grey area in the law." Elsewhere, he contradictorily contends that his ineligibility was an obvious status that Attorney Beck failed to appropriately consider.
In conclusion, an expert opinion was required to rebut Attorney Beck's own expert opinion that he did not commit malpractice regarding the motion for conditional probation. As such, Mr. Perotti was required to support his opposition motion with the opinion of an expert who would state that Attorney Beck's conduct surrounding the motion for conditional probation was not in accordance with the knowledge, skill and ability ordinarily exercised in the legal profession in similar situations. For the above reasons, the trial court correctly granted summary judgment to Attorney Beck on the claims surrounding the motion for conditional probation. However, this does not end our inquiry.
 ANALYSIS: MOTION FOR A NEW TRIAL
Appellant alleges that he not only hired Attorney Beck to file a motion for release but also to file a motion for a new trial. He states that Attorney Beck properly obtained an affidavit from a stabbing victim who wished to recant his prior testimony. This affidavit was to be attached to the motion for a new trial. Appellant notes that Attorney Beck filed a motion for leave to file a motion for new trial; however, he never filed the actual motion for a new trial with the attached affidavit. In answers to interrogatories, Attorney Beck admitted this fact. He seems to deny that he was retained to file the motion; however, it is unclear because the interrogatory question relating to this contains multiple parts, and the denial is general.
Contrary to Attorney Beck's arguments, an expert opinion is not required to determine whether part of Mr. Perotti's payment of $2,000 to Attorney Beck was made to cover the cost of a motion for new trial. SeeBaiko v. Mays (2000), 140 Ohio App.3d 1, 7-8 (where the Eight Appellate District held that an expert opinion was not required to support the plaintiff-dentist's allegation that he hired the defendant-attorney to obtain and review patient files and that this was not done). Whether Attorney Beck was specifically hired to file a motion for a new trial is a question of fact. In answering this question of fact, it is a jury who must determine the credibility of testimony presented by Attorney Beck and Mr. Perotti. The jury must also weigh the evidence, such as the contents of various letters written by Attorney Beck to Mr. Perotti that discuss the filing of a new trial motion. Id. at 8 (stating that a jury should resolve the question as to what the terms of the parties' professional engagement required the attorney to do). Therefore, the court erred when it granted summary judgment on this issue.
For the foregoing reasons, the order granting summary judgment is affirmed in part, reversed in part and this cause is remanded to the trial court for further proceedings on the issue of whether Attorney Beck was hired and paid to file a motion for a new trial.
DONOFRIO, J. and WAITE, J., concurs.
[1] We feel compelled to note that Mr. Perotti filed this same complaint in the Mahoning County Common Pleas Court in June 1999. On August 6, 1999, a mere week before the complaint in this case was filed, the trial court found that it lacked venue and transferred the case to Scioto County. Based on these prior events, Attorney Beck filed a timely motion to dismiss the present case as being redundant and reminded the court that it had previously transferred venue to Scioto County. Mr. Perotti responded on September 21, 1999, stating that he voluntarily dismissed the case after it was transferred to Scioto County. Based on this response and the fact that the court did not address his motion to dismiss, on November 12, 1999, Attorney Beck filed an affidavit and a motion for change of venue, citing Civ.R. 3(B)(1)-(3) and noting that Scioto County is where the activity that gave rise to the claim took place and where he, as the defendant, resides and has his principal place of business. Mr. Perotti responded by arguing that the motion for change of venue was untimely and by stating that venue may lie where he, as the plaintiff, resides. Note that pursuant to Civ.R. 3(B)(11), venue may not lie where the plaintiff resides unless the main venue options in Civ.R. 3(B)(1)-(10) are unavailable. The court overruled Attorney Beck's motion to change venue. Because venue is not jurisdictional and is not before us on appeal, we may not address this issue. However, we find it strange that, after transferring a case for lack of venue, that same court would allow that same case to proceed after voluntary dismissal in the transferee venue and refiling in the transferor venue.