JOURNAL ENTRY and OPINION.
{¶ 1} Appellant Source Technology, Inc. (Source) appeals from the trial court's granting summary judgment in favor of appellee Turmatic Systems, Inc. (Turmatic). Source assigns the following errors for our review:
 {¶ 2} "I. The trial court erred in granting defendant's motion for summary judgment on plaintiff's contract claim."
 {¶ 3} "II. The trial court erred in granting defendant's motion for summary judgment on plaintiff's promissory estoppel claim."
 {¶ 4} "III. The trial court erred in denying plaintiff's motion for summary judgment."
 {¶ 5} Having reviewed the record and pertinent law, we affirm the judgment of the court. The apposite facts follow.
 {¶ 6} Source is a Subchapter S Corporation, wholly owned and operated by Richard Nicholl. The company is in the business of selling large machines and machine tools. In February 1998, Nicholl discovered the Hessapp Company had transferred its product line of machines to Turmatic. Since Nicholl was familiar with the Hessapp line of machines, he was interested in becoming the sales representative for the product. Nicholl contacted Matthias Walter, the sales manager at Turmatic, and a meeting was set up for Nicholl to meet with Turmatic's Vice President and General Manager, John Klepacki, in St. Louis on April 1, 1998.
 {¶ 7} Both Nicholl and Klepacki testified in their depositions that an oral agreement was entered into at the conclusion of the meeting in which it was agreed Source would be the Turmatic representative in Ohio for the Hessap line of machines. This was to be a trial agreement for one year. At the end of the year, Turmatic would decide whether to extend a written agreement to Source.
 {¶ 8} According to both Nicholl and Klepacki, they agreed upon a commission of six-percent on the first million dollars in sales and four-percent thereafter. The commission was to be split three ways: one-third to the sales distributor; one-third to the engineer; and, one-third to the delivery distributor. Nicholl admitted the earned commissions applied during the term of his agreement.[1]
 {¶ 9} According to Nicholl and Klepacki, a written letter verifying certain aspects of the oral agreement was sent by Klepacki to Nicholl at Nicholl's urging. The letter, dated September 23, 1998, stated in pertinent part:
 {¶ 10} "This letter is in regards to confirming our conversation on representation in the upper portion of the state of Ohio, between Turmatic Systems, Inc. and Source Technology, Inc.
 {¶ 11} "We look forward to enjoying the benefits of sales representation by you, based on the continuous improvement of contact with customers and sales potential.
 {¶ 12} "Turmatic Systems, Inc. shall be reviewing its status in terms of agent representation at the end of the 1998 calendar year. Based on the extent of representation, follow-up with sales leads and overall satisfaction, it will be decided whether continued partnership between the company and the agent is deemed beneficial for both parties, resulting in either a contractual arrangement, extension of agreement or termination of the partnership.
 {¶ 13} "The commission schedule will be the same as if a contract was in force, namely 6% on the first $1,000,000 and 4% on all items over $1,000,000. There is no commission paid on spare parts or service."
 {¶ 14} Nicholl admitted he never objected to the commission schedule set forth in the letter, even though it failed to set forth the tripartite split of the commission that was discussed with Klepacki.[2]
According to Klepacki, although the letter did not set forth the three-tiered commission they had agreed to, it was custom in the industry to split the commission with the sales agent, engineer and the delivery distributor.[3]
 {¶ 15} In January 1999, Turmatic requested that all of its sales representatives, including Source, attend a sales seminar introducing a new product line being held in Germany that February. Nicholl claims he attended the seminar because he was under the impression that by extending him an invitation to the seminar, Turmatic had decided to extend him a formal agreement to represent the Hessapp line of machines. On April 19, 1999, however, Turmatic terminated the representative agreement with Source due to low sales productivity. Source had failed to consummate a single sale during the one-year trial period.
 {¶ 16} After the agreement was terminated, Source contended it was entitled to the one-third delivery commission for the delivery of Hessapp machines to the Simpson Industries plant in Edon, Ohio. Source contended that the sale was entered into with Simpson while Source was still an agent and the delivery occurred in Source's sales territory.
 {¶ 17} Apparently, in May 1998, Simpson Industries placed an order for the purchase of five Hessapp machines. Nicholl admitted he did not actually negotiate the sale.[4] Originally, the machines were to be delivered to Simpson's plant in Bluffington, Indiana, but on January 28, 1999, the delivery was changed to the Edon, Ohio plant, which was within Source's sales territory. The machines were delivered in five different shipments from June 28, 1999 to January 27, 2000, which was after the time that Source's agreement with Turmatic had been terminated. The delivery commission for the Simpson sale amounted to one-third of the $76,971 commission, or $25,657.
 {¶ 18} Because Source had done nothing to facilitate the sale, and because the delivery of the machines occurred after the agreement was terminated, Turmatic refused to pay Source the commission. Although Turmatic did offer Source three months protection on request for final proposals still pending at the time of the termination, the protection was only for proposals that Source generated. A list of the protected proposals was attached to the termination letter. The Simpson account was not on the list because Source did not generate the account.
 {¶ 19} Source filed a complaint on October 9, 2001 against Turmatic alleging breach of an oral contract regarding Turmatic's failure to pay Source the commission owed on the Simpson delivery and breach of an implied covenant of good faith for failing to reimburse Nicholl the expense he incurred attending the seminar in Germany.
 {¶ 20} The parties filed cross motions for summary judgment. The trial court granted Turmatic's motion for summary judgment in a two-page opinion, and denied Source's motion.
 {¶ 21} In its first assigned error, Source argues it was entitled to one-third of the Simpson commission because Source was Turmatic's Ohio representative for the Hessapp machines at the time the sale was negotiated and entered into, and because while it was still the representative, the delivery order was changed from Bluffington, Indiana to Edon, Ohio, which was in Source's sales territory.
 {¶ 22} We consider an appeal from summary judgment under a de novo standard of review.[5] Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.[6] Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can only reach one conclusion which is adverse to the non-moving party.[7]
 {¶ 23} The moving party carries an initial burden of setting forth specific facts which demonstrate his or her entitlement to summary judgment.[8] If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will only be appropriate if the non-movant fails to establish the existence of a genuine issue of material fact.[9]
 {¶ 24} We agree with Source that the September letter from Klepacki did not constitute a written agreement between the parties. The letter merely verified that an oral agreement had been entered into. As both Nicholl and Klepacki admitted, the letter did not set forth all the agreed upon terms, but was merely a written confirmation that an agreement of representation had been entered into.
 {¶ 25} In First National Securities Corp. v. Hott,[10] the Ohio Supreme Court stated, "under no statute does a written memorandum which merely evidences an oral contract convert such oral contract into a contract in writing." In Thomas H. Jacoby Assocs., Inc. v. JednakFloral Co.[11] the Tenth District court of appeals explained this principle by saying, "* * * where a writing of one party merely memorializes that party's understanding of an oral contract, the contract remains an oral contract, not a written contract." In the instant case, the letter clearly stated, "This letter is in regards to confirming our conversation of representation * * *."
 {¶ 26} We therefore agree with Source that at the time the negotiations for the Simpson sale occurred in April 1998 and the sale was entered into in July 1998, Source had an oral agreement with Turmatic as indicated by Nicholl's and Klepacki's deposition testimony in which they both testified an agreement was entered into in April 1998.
 {¶ 27} We also conclude that because the letter did not constitute the agreement, evidence of the tripartite commission split could be considered since the parol evidence rule only operates to exclude oral agreements when a written agreement exists. The parol evidence rule states that "`absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.'"[12] The rule, therefore, "prohibits the admission of testimony regarding prior or contemporaneous oral agreements which contradict or vary the terms of written agreements."[13] In the present case, since the letter did not constitute a written agreement, the alleged other terms that were orally agreed to could be considered.
 {¶ 28} Nonetheless, even if the three-way split of the commission was agreed to, we find that Source was not entitled to receive the one-third delivery commission. Although Nicholl contends the delivery commission was earned at the time the shipment order was placed, and that the commission was not dependent on when the delivery actually occurred, we find the deposition testimony indicates otherwise.
 {¶ 29} Nicholl testified in his deposition the delivery distributor earns the commission by "holding" the customer's hand during the delivery process.[14] Klepacki also stated in his deposition that a tremendous amount of time is spent by the delivery distributor to get the machines up and running.[15] There was absolutely no evidence presented in the record that Source assisted in the delivery of the machines to the Simpson plant in Edon, Ohio. At the time of the first delivery, Source's contract had been terminated by Turmatic two months previously. Therefore, Source did nothing to earn the commission.
 {¶ 30} Furthermore, Nicholl admitted the commission applied to those earned during the "term of the agreement."[16] Even Klepacki admitted although a delivery commission is earned at the time the location of the shipment is determined, a delivery distributor would not be entitled to the commission if the distributor terminated the agreement prior to the shipment.[17] Although in this case, the agreement was terminated by Turmatic, the same logic applies. If the agreement is terminated prior to the delivery, the agent has done nothing to earn the delivery commission.[18]
 {¶ 31} Because we conclude Source was not entitled to the delivery commission on the deliveries which occurred after the termination of its agreement, the trial court did not err in granting summary judgment in favor of Turmatic.
 {¶ 32} Source's first assigned error is overruled.
 {¶ 33} In its second assigned error, Source argues the trial court erred in granting summary judgment on its promissory estoppel claim because Turmatic's letter urging Source to attend a seminar introducing a new product line in Germany was calculated to induce Nicholl to make the trip based on the promise of future representation. As a result, Nicholl incurred the cost of the trip in the amount of $1,451.86.
 {¶ 34} Turmatic urges us not to review Source's promissory estoppel claim because it was not properly pled in the complaint, but was instead raised in Source's motion for summary judgment over Turmatic's objection.
 {¶ 35} Civ.R. 15(B) states in part: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." In the instant case, Turmatic, in its motion in opposition, objected to Source's raising the promissory estoppel claim in its motion for summary judgment. Therefore, the claim was not tried by consent. However, when there is an objection to the claim because it is outside the pleadings, the trial court shall allow amendment if the following criteria exist: (1) "the presentation of the case's merits will be subserved thereby" and (2) "the objecting party does not satisfy the court that admission of the evidence would prejudice him in maintaining his case upon the merits."[19] The objecting party must establish that he will be subjected to a serious disadvantage in presenting his case and this requires more than a showing of just mere surprise.[20] The trial court has broad discretion to freely allow amendments pursuant to Civ.R. 15(B).[21] As such, this court will not disturb the trial court's decision absent an abuse of discretion.[22]
 {¶ 36} In this case, Turmatic failed to show it was prejudiced by the addition of the claim. Although it objected to Source raising the claim in its motion for summary judgment, it also set forth its argument in opposition to the promissory estoppel claim. Therefore, because of the lack of prejudice to Turmatic, the promissory estoppel claim was properly asserted.
 {¶ 37} Nonetheless, we find summary judgment as to this claim was properly granted. Promissory estoppel is "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."[23] In order to prove a case of promissory estoppel under Ohio law, a plaintiff must demonstrate the following elements: (1) a promise, clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) reliance that is reasonable and foreseeable; and (4) injury caused by the reliance.[24]
 {¶ 38} The court did not err by granting summary judgment on Source's promissory estoppel claim because there is no evidence that Turmatic set forth a "clear and unambiguous promise." Nicholl claims the letter Turmatic sent regarding the seminar in Germany extended a "clear and specific promise of future representation."[25] However, a review of the letter contains no such promise. The letter simply stated that attendance was important for successful representation of the products. The language does not set forth a clear and unambiguous promise on Turmatic's behalf extending a representation agreement to Source. The form letter, which was sent out to all of Turmatic's sales agents, was simply an effort to encourage attendance at the sales seminar.
 {¶ 39} Accordingly, Source's second assigned error is overruled.
 {¶ 40} In its third assigned error, Source contends the trial court erred by denying its motion for summary judgment because it was entitled to judgment as a matter of law.
 {¶ 41} Because we found in the first and second assigned errors summary judgment was properly entered in favor of Turmatic, this assigned error is moot and need not be addressed. App.R. 12(A)(1)(c).
Judgment affirmed.
ANNE L. KILBANE, J., and TIMOTHY E. McMONAGLE, J., concur.
[1] Nicholl Depo. at 103.
[2] Nicholl Depo. at 69.
[3] Klepacki Depo. at 71.
[4] Nicholl Depo. at 109-110.
[5] Baiko v. Mays (2000), 140 Ohio App.3d 1, citing Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35; Northeast Ohio Apt. Assn.v. Cuyahoga Cty. Bd. of Commrs. (1997), 121 Ohio App.3d 188.
[6] Id. at 192, citing Brown v. Scioto Bd. Of Commrs. (1993),87 Ohio App.3d 704.
[7] Temple v. Wean United, Inc. (1997), 50 Ohio St.2d 317, 327.
[8] Dresher v. Burt, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107.
[9] Id. at 293.
[10] (1954), 162 Ohio St. 258, 262.
[11] (Nov. 7, 1991), Franklin App. No. 90AP-1228. See, also, Diemertv. Rubenstein (July 27, 2000), Cuyahoga No. 76575 (letter does not convert oral contract into a written contract).
[12] Galmish v. Cicchini (2000), 90 Ohio St.3d 22, 27, 734, quoting 11 Williston on Contracts (4 Ed. 1999) 569-570, Section 33:4.
[13] Finomore v. Epstein (1984), 18 Ohio App.3d 88, 89.
[14] Nicholl Depo. at 123.
[15] Klepacki Depo. at 40.
[16] Nicholl Depo. at 103.
[17] Klepacki Depo. At 134-135.
[18] Although Turmatic did extend a three-month protection for commissions earned on sales generated by Source, the Simpson account at issue was not included on the list.
[19] Hall v. Bunn (1984), 11 Ohio St.3d 118, 121.
[20] Id. at 122.
[21] Spisak v. McDole (1984), 15 Ohio St.3d 62, 63.
[22] Id.
[23] Talley v. Teamsters Local No. 377 (1976), 48 Ohio St.2d 142, 146, quoting and adopting Restatement of the Law, Contracts 2d (1973), Section 90.
[24] Weiper v. W.A. Hill Assocs. (1995), 104 Ohio App.3d 250,260.
[25] Appellant brief at 22.