[Cite as *Moore! v. Cranbrook Meadows*, 2013-Ohio-4487.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99621**

## CARLETON MOORE!

PLAINTIFF-APPELLANT

vs.

## CRANBROOK MEADOWS, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-775514

**BEFORE:** Jones, J., Stewart, A.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** October 10, 2013

**ATTORNEY FOR APPELLANT**

Bradley Hull, IV
30195 Chagrin Boulevard
Suite 110N
Pepper Pike, Ohio 44124


**ATTORNEY FOR APPELLEES**

Kirk E. Roman
50 S. Main Street
Suite 502
Akron, Ohio 44308

LARRY A. JONES, SR., J.:

{¶1} Plaintiff-appellant, Carleton Moore!,[1] appeals from the trial court's judgment granting the motion for summary judgment of defendants-appellees, Cranbrook Meadows Condominium Development, a.k.a. Cranbrook Meadows Condominium Owners Association ("Cranbrook Meadows") and Carlyle Management Company. We affirm.

I. Procedural History and Facts

{¶2} In February 2012, Moore! filed this action against Cranbrook Meadows and Carlyle Management.[2] The following facts were alleged in Moore!'s complaint. Moore! owned a unit in Cranbrook Meadows, a condominium development located in Warrensville Heights, Ohio. The complaint alleged that in January 2009, water seeped into a unit adjoining Moore!'s unit. At the time, Moore! was out of town and efforts by the adjoining unit owner to reach him were unsuccessful. The adjoining unit owner contacted the Warrensville Heights police, who forcibly entered another adjoining unit, where a leak was discovered.[3] A maintenance man from Cranbrook Meadows was allowed into the unit to stop the leak. That unit was vacant at the time of the incident.

{¶3} Upon returning home several days later, Moore! discovered that approximately six inches of water had accumulated in his suite. Moore! contacted Cranbrook Meadows

---

[1]The exclamation mark is part of appellant's name.

[2]This case was a refiling of a previously dismissed action, Case No. CV-703596.

[3]The owner of the unit, Elaine Brightharp, was named as a defendant in the first action; she

that same day to report the damage. Approximately four days later, an agent from Cranbrook Meadows's insurance company informed Moore! that Cranbrook Meadows's policy would only cover any damage to the walls of the premises.

{¶4} Moore!, therefore, mitigated much of the damage on his own. According to the complaint, the unit from where the leak originated had twice caused damage to Moore!'s unit from leaks over 20 years prior to this incident. Moore! alleged that the defendants failed to take reasonable precautionary measures to ensure that leaks would not reoccur.

{¶5} The complaint contained claims for relief based on two causes of action: Cranbrook Meadows's negligence and Carlyle Management's negligence. Punitive damages were included as a claim for relief.

{¶6} On October 15, 2012, the defendants filed a motion for summary judgment. A first extension allowed Moore! until November 21, 2012, to oppose the motion and a second extension allowed him until December 11, 2012. On December 11, Moore! filed a motion to "stay defendants' motion for summary judgment or in the alternative for conference of response deadline to defendants' motion for summary judgment." On February 8, 2013, the trial court denied Moore!'s motion, and granted the defendants' motion for summary judgment.

{¶7} Moore! contends the following in his sole assignment of error: "The trial court improperly granted summary judgment in favor of appellees Cranbrook Meadows

filed for bankruptcy and was not renamed as a defendant in this case.

Condominium Association and Carlyle Management Company because a genuine issue of material fact existed whether appellees were negligent."

## II. Law and Analysis

**{¶8}** We review an appeal from summary judgment under a de novo standard of review. *Baiko v. Mays*, 140 Ohio App.3d 1, 746 N.E.2d 618 (8th Dist.2000), citing *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987); *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 699 N.E.2d 534 (8th Dist.1997). Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.

**{¶9}** Under Civ.R. 56, summary judgment is appropriate when, (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party.

**{¶10}** The moving party carries an initial burden of setting forth specific facts that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the nonmovant fails to establish the existence of a genuine issue of material fact. *Id.* at 293.

**{¶11}** In support of their motion, the defendants relied on Moore!'s deposition

testimony[4] and the condominium development's Declaration and Bylaws.

Moore!'s Deposition Testimony

{¶12} Moore! moved into his condominium unit in 1985. He testified that in the winters of 1986 and 1989, his unit had been damaged when water lines in the same unit at issue here were compromised.[5] According to Moore!, those prior incidents should have put the defendants on notice that a pipe would burst again if significant remedial action was not taken.

{¶13} The burst pipe in Brightharp's unit at issue in this incident was located under her kitchen sink. Moore! also testified that a second pipe from a "common" water line running between his unit and Brightharp's unit leaked and caused damage to his unit, which defendants repaired.

{¶14} Moore! testified that the defendants' failure to properly "winterize" Brightharp's unit caused the damage to his unit. He described the process of "winterizing" a unit, which requires access to the inside of the unit. Moore! admitted, however, that it was his understanding that Cranbrook Meadows was not able to enter a unit at its pleasure.

{¶15} According to Moore!, a unit should be "winterized" when it is vacant, which Brightharp's was at the time of the incident. But Moore! admitted that he did not know

---

[4]Moore!'s deposition was taken during the pendency of the first case, and the transcript was refiled in this case.

[5]Brightharp did not live in the unit at the times.

whether the defendants had actual or constructive knowledge of the vacancy. In fact, Moore!, whose unit was right next door to Brightharp's unit, did not even know that Brightharp's unit was vacant until after the incident.

{¶16} Moore! testified that as a result of the incident, his unit sustained damage to the carpeting, padding, tile, drywall, and baseboards; and personal property such as furniture, stereo equipment, dining room furniture and a Persian rug were also damaged. He further testified that he had a mold problem in his unit as a result of the incident.

Condominium Development Declarations and Bylaws

{¶17} The condominium development's Bylaws distinguish between a "family unit," which is an individual unit owner's exclusive property, and "common areas and facilities," which is the property of the condominium association.

{¶18} A family unit is defined as a "freehold estate" consisting of "all the space bound by the undecorated surfaces of the perimeter walls, floors and ceiling of each such Family Unit * * *." Declaration, Article I(A).

{¶19} "Common areas and facilities" are defined in relevant part as the:

> entire balance of the land improvements thereon, including, but not limited to, all buildings, foundations, roofs, main and supporting walls, slate, patios, exterior parking spaces, storage spaces, community and commercial facilities, swimming pools, pumps, trees, lawns, gardens, pavement, balconies, stoops, wires, conduits, utility lines and ducts now or hereafter situated on the Condominium Property * * *.

Id. at Article I(B).

{¶20} Relative to maintenance of "family units," the Declaration provides in part as follows:

1. <u>By the Association.</u>   The association, at its expense, shall be responsible for the maintenance, repair and replacement of those portions of each Family Unit which contribute to the support of the building, excluding, however, interior walls, ceiling and floor surfaces.   In addition, the Association shall maintain, repair and replace all conduits, ducts, plumbing, wiring and other facilities for the furnishing of utility services which may be located within the Family Units boundaries, exclusive of any portions of the foregoing which may be located at or beyond the wall outlets, or which may be the responsibility of an individual family owner under any other provision of this Declaration.

2. <u>Family Unit Owner.</u>   The responsibility of each Family Unit owner shall be as follows:

(a) To maintain, repair and replace at his expense all portions of his Family Unit, and all internal installations of such Family Unit such as appliances, heating, plumbing, electrical and air conditioning fixtures or installations, and any portion of any other utility service facilities located within the Family Unit boundaries.

* * *

(c) To perform his responsibilities in such manner so as not unreasonably to disturb other persons residing within the building.

* * *

(e) To promptly report to the Association or its agent any defect or need for repairs, the responsibility for the remedying of which is with the Association.

*Id.* at Article II(A)(1) and (2).

**{¶21}** Further, in regard to the Association's maintenance of "family units," the

Bylaws provide as follows:

Section 1.   <u>Payments from Maintenance Funds.</u>   The Association, for the benefit of all the owners, shall acquire, and shall pay for out of the maintenance fund hereinafter provided for, the following:

* * *

I.   Certain Maintenance of Units.   Maintenance and repair of any unit if such maintenance or repair is necessary, in the discretion of the Association, to protect the common areas and facilities, or any other portion of a building, and the owner or owners of said unit have failed or refused to perform said maintenance or repair within a reasonable time after written notice of the necessity of said maintenance or repair delivered by the Association to said owner or owners, provided that the Association shall levy special assessment against such unit owner for the cost of said maintenance or repair.

Bylaws, Article IV, Section 1, ¶ I.

{¶22} The Bylaws further provide that the Association has the right to enter a "family unit" as follows in part:   "The Association or its agents may enter any unit when necessary in connection with any maintenance or construction for which the Association is responsible."   *Id.* at ¶ J.

De Novo Review

{¶23} Initially, we address Moore!'s contention that the trial court granted the defendants' motion for summary judgment before the defendants complied with their obligation to provide discovery to Moore!.

{¶24} The first request for an extension of time to respond to the summary judgment motion, in which the defendants joined, cited outstanding discovery due from the defendants to Moore!.   The second request, in which the defendants again joined, was made on the ground that Moore! had, two days prior to the filing of the motion, been served with defendants' "completed responses to [Moore!'s] discovery requests" and needed additional time to formulate his opposition to the summary judgment motion based on those discovery responses.   The trial court granted the motion on November 21, 2012, and gave Moore! until December 11, 2012, to file his opposition.

**{¶25}** On December 11, Moore! filed a motion to "stay defendants' motion for summary judgment or in the alternative for conference of response deadline to defendants' motion for summary judgment." As ground for the motion, Moore! contended that the defendants' responses to his discovery requests were "incomplete and or evasive." He submitted his affidavit in support of the motion.

**{¶26}** In his affidavit, Moore! averred in paragraphs 2 through 11 to legal conclusions or propositions. Paragraphs 12 through 16 contained averments relative to the prior case. Paragraphs 17 through 26 contained averments relative to the discovery practice and procedural history of this case.

**{¶27}** Summarizing the remaining paragraphs (27 through 50), Moore! averred that (1) assertions in the defendants' summary judgment motion were incorrect; (2) because of the defendants' "deficient discovery responses" he was unable to properly oppose the summary judgment motion; and (3) "despite Defendants' failure to produce significant information requested in discovery that prejudices [him] in his ability to defend against Defendants' Motion for Summary Judgment, construing all facts in favor of [him] as non-moving party, a genuine issue of material fact exists, and Defendants' Motion for Summary Judgment should be [denied]."

**{¶28}** A final pretrial was held on January 9, 2013. On February 8, 2013, the trial court issued two rulings — the first denying as moot Moore!'s motion to "stay defendants' motion for summary judgment or in the alternative for conference of response deadline to defendants' motion for summary judgment" for the reason that "at the final pretrial,

[Moore!'s] counsel indicated he would not be responding further to the motion for summary judgment," and the second granting the defendants' summary judgment motion.

{¶29} We disagree with Moore!'s contention that the trial court prematurely granted the defendants' summary judgment motion for two reasons. First, Moore!'s second request for an extension of time was based on his contention that, two days prior to the filing of the motion, he had been served with defendants' "completed responses to [Moore!'s] discovery requests" and needed additional time to prepare his opposition. There was no mention that the responses were incomplete, evasive, or otherwise not in conformity with the Ohio Rules of Civil Procedure.

{¶30} Second, assuming arguendo that at first glance the responses appeared compliant, but upon later inspection were not, the proper filing would have been a motion to compel, and preferably one not filed on the due date of the opposition, especially in light of the prior extensions. No motion to compel was filed.

{¶31} Unpersuaded by Moore!'s contention that the summary judgment motion was prematurely ruled on, we move on to consider the merit of the trial court's judgment granting the motion. The defendants' motion was based on the ground that they had no obligation to "winterize" a unit they did not even know was vacant. Their position was that the burst occurred in Brightharp's unit, in a pipe located underneath her kitchen sink, at a time when her unit was vacant, unbeknownst to them, and Moore!.

{¶32} Moore! contends that the defendants misconstrued his deposition testimony. Specifically, he contends that his testimony that a second pipe from a "common water line"

that ran between his unit and Brightharp's unit leaked and caused damage to his unit. According to Moore!, that testimony was sufficient evidence to demonstrate a genuine issue of material fact.

{¶33} Upon review, Moore!'s non-expert testimony did nothing more than set forth the theory of his case, as alleged in his complaint, and was not sufficient to overcome the defendant's motion. When repeatedly asked how the damage to his unit occured, Moore! responded that he believed his unit had been damaged (including the damage from the second pipe) because Brightharp's unit had not been winterized. But Moore! did not present any evidence demonstrating that lack of winterization was, in fact, what had caused the pipes to fail.

{¶34} Moreover, under the condominium instruments, liability for Moore!'s theory of lack of winterization would have been assigned to Brightharp, whose responsibility it was to maintain the "utility service facilities within [her] Family Unit boundaries." Declaration, Article II(A)(2).[6] There was no indication that the defendants were even aware that Brightharp's unit was vacant, and prior occurrences over 20 years ago (when Brightharp was not even living in the unit and it was not demonstrated that the problem occurred because of a failure to winterize) did not put the defendants on notice that the incident here was likely to occur.

{¶35} On this record, we find that Moore! failed to demonstrate that a genuine issue

---

[6] *See* R.C. 5311.23(A) stating that a unit owner is "liable in damages in a civil action for harm caused to any person * * * by that individual's failure to comply with any lawful provision of the condominium instruments."

of material fact existed.    Therefore, the trial court properly granted summary judgment in favor of the defendants.    The sole assignment of error is overruled.

**{¶36}** Judgment affirmed.

It is ordered that appellees recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., JUDGE

MELODY J. STEWART, A.J., and
TIM McCORMACK, J., CONCUR