JOURNAL ENTRY and OPINION
{¶ 1} Appellant Joe G. Ballard, Jr. appeals the trial court's judgment, in which the court entered summary judgment in favor of appellee Ford Motor Company ("Ford") on Ballard's intentional tort claim. Ballard assigns the following error for our review:
"The trial court erred in granting summary judgment todefendantappellee."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the decision of the trial court. The apposite facts follow.
 {¶ 3} On March 5, 2002, Ballard filed a complaint alleging an intentional tort claim against Ford for injuries he suffered on March 1, 2001, when he fell off an oil covered platform while working for Ford.
 {¶ 4} Ford filed a motion for summary judgment. The evidence attached to Ford's motion indicated that Ballard had been employed at the Ford casting plant in Cleveland since 1973. For over ten years he traversed the slippery platform at issue. The platform was approximately six feet off the ground and was located next to a pattern making machine, which sprayed oil onto the patterns. As a result, excess oil was sprayed onto the adjacent platform. Ballard contended he repeatedly complained to various supervisors and foremen about the slippery condition, but nothing was done to remedy the problem.
 {¶ 5} The various supervisors and foremen denied that Ballard ever ever complained to them about the accumulation of oil on the platform and testified that they regularly traversed the platform before and after Ballard's injury and were not aware of any slippery conditions. Prior to Ballard's injury on March 5, 2001, no one had been injured as a result of the oil accumulation on the platform.
 {¶ 6} Immediately after he fell, Ballard was aware that more oil than usual had accumulated on the platform that day. Several days prior to Ballard's fall, an exhaust duct had been installed over the platform in an effort to relieve the problem of the oil accumulating on the platform. The exhaust was suppose to remove the excess oil. Ballard did not notice the duct until after he fell. He then saw oil was accumulating in a duct seam, which was dripping directly onto the platform. Ballard admitted that he never complained about the dripping because he was not aware of it until after his fall.
 {¶ 7} Randy Dougall, the plant safety coordinator and Delbert Echols, the plant superintendent, confirmed in their affidavits that, prior to Ballard's accident, they had received no complaints about the exhaust duct dripping oil.
 {¶ 8} Ballard attached an affidavit to his motion in opposition, in which he contended he informed Arlington McClinton, Jim Grieves, and Mark Fenderbosh that the pattern machine was spraying oil onto the platform. In his interrogatory, Ballard also stated that due to his repeated complaints about the oily platform that the Union Health and Safety Committee became that the Union Health and Safety Committee became involved, resulting in the installation of the exhaust duct. According to Ballard, the installation of the duct made the platform even more dangerous.
 {¶ 9} Ballard's co-worker, Jackie Tabb, stated in his affidavit that he personally complained about oil being sprayed on the platform from the pattern machine and also stated that Ballard had complained about the oil leak from the "shield system" under the "pipe." However, the evidence indicated the "shield" was not installed until after Ballard's fall in order to deflect the oil dripping from the duct's seam. Tabb also stated that he had slipped several times on the platform, but never actually fell.
 {¶ 10} Ballard's co-worker, Antonio Ruiz, stated in his affidavit that the machine's spraying oil onto the platform was a problem, but that he had never complained about it. He was aware others had complained about the platform's oily condition.
 {¶ 11} After considering the above evidence, the trial court granted Ford's motion stating as follows:
"Defendant's motion for summary judgment is granted. The court findsplaintiff has not met his burden articulated by the Ohio Supreme Court inFyffe v. Jeno, 59 Ohio St.3d 115 (1991), specifically, element two of theemployer intentional tort standard. As such, the court finds that agenuine issue of material fact does not exist and defendant is entitledto judgment as a matter of law."[1] {¶ 12} Ballard argues that the trial court erred by granting summary judgment because the evidence indicated that Ford was aware of the oil problem on the platform and realized the possibility of injury. We disagree.
 {¶ 13} We review an appeal from summary judgment under a de novo standard of review.[2] Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.[3] Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion which is adverse to the non-moving party.[4]
 {¶ 14} The moving party carries an initial burden of setting forth specific facts which demonstrate his or her entitlement to summary judgment.[5] If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be burden, summary judgment will be appropriate only if the non-movant fails to establish the existence of a genuine issue of material fact.[6]
 {¶ 15} The law setting forth the necessary elements and level of proof required to demonstrate a workplace intentional tort is well established. In Fyffe v. Jeno,[7] the Ohio Supreme Court modified and explained the three-prong test originally set forth in Van Fossen v.Babcock Wilcox Co.[8] that an employee must satisfy in order to prevail on a workplace intentional tort claim against an employer. The Court in Fyffe held that
"in order to establish `intent' for the purpose of proving theexistence of an intentional tort committed by an employer against hisemployee, the following must be demonstrated: (1) knowledge by theemployer of the existence of a dangerous process, procedure,instrumentality or condition within its business operation; (2) knowledgeby the employer that if the employee is subjected by his employment tosuch dangerous process, procedure, instrumentality or condition, thenharm to the employee will be a harm to the employee will be a substantialcertainty; and (3) that the employer, under such circumstances, and withsuch knowledge, did act to require the employee to continue to performthe dangerous task."[9]
 {¶ 16} The Court further outlined the proof necessary to establish intent on the part of the employer stating:
"To establish an intentional tort of an employer, proof beyond thatrequired to prove negligence and beyond that to prove recklessness mustbe established. Where the employer acts despite his knowledge of somerisk, his conduct may be negligence. As the probability increases thatparticular consequences may follow, then the employer's conduct may becharacterized as recklessness. As the probability that the consequenceswill follow further increases, and the employer knows that injuries toemployees are certain or substantially certain to result from theprocess, procedure or condition and he still proceeds, he is treated bythe law as if he had in fact desired to produce the result. However, themere knowledge and appreciation of a risk — something short ofsubstantial certainty — is not intent."[10]
 {¶ 17} We agree with the trial court that Ballard failed to prove Ford was aware that injury was "substantially certain" to occur from the condition. The deposition testimony indicates that the oily surface existed on the platform for at least ten years, yet no injuries occurred prior to Ballard's injury. The absence of previous accidents or injuries is a relevant factor in determining whether the employer had knowledge whether the employer had knowledge injury was "substantially certain" to occur.[11]
 {¶ 18} Supervisor Arlington McClinton, Maintenance Planning Specialist Jim Rice, and Superintendent Mark Fenderbosh, stated in their affidavits that they traversed the area several times a day without slipping. Therefore, although Ford's failure to alleviate the problem can be described as negligent or reckless, it is less than the "substantial certainty" required for an intentional tort claim. "Mere knowledge and appreciation of the risk" does not amount to "substantial certainty."[12]
 {¶ 19} Moreover, Ballard has failed to prove that Ford was aware of the specific problem which caused Ballard's fall. Although Ballard contends he informed Ford for several years about the oil accumulation on the platform, this was prior to Ford's attempts to rectify the problem by installing an exhaust duct above the platform "to suck up some of the spray off the drag machine."[13]
 {¶ 20} The evidence indicated that the new exhaust duct was accumulating oil at its seam, causing oil to drip onto the platform. Ford was never advised of this problem. Ballard admits he was not aware of the newly he was not aware of the newly installed duct until after his fall; therefore, he never complained to Ford about the exhaust duct. Ballard even stated that there was "more [oil] up there [on the platform] than normal"[14] on the day of his fall. Thus, it cannot be said that Ford had knowledge of a dangerous condition it believed had been rectified.
 {¶ 21} Ford may have been negligent regarding the installation of the exhaust duct, but it did not intentionally expose Ballard to harm. Thus, our review of the evidence indicates that, at best, Ballard has a negligence claim, which is compensable under workers' compensation.
 {¶ 22} Finally, we disagree with Ballard's contention that the trial court relied on unauthenticated portions of deposition excerpts attached to Ford's motion for summary judgment. After Ballard objected to the excerpts, Ford filed the complete transcripts with the trial court. The depositions were filed one month prior to the trial court's granting summary judgment. Therefore, no prejudice resulted to Ballard because the court had received the entire transcripts prior to ruling on the motion. Accordingly, the trial court did not err by entering judgment in favor of Ford. Ballard's sole assigned error is overruled.
Judgment is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, J., and Gallagher, J., concur.
[1] Journal entry, July 29, 2004.
[2] Baiko v. Mays (2000), 140 Ohio App.3d 1, citing Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35; Northeast Ohio Apt. Assn.v. Cuyahoga Cty. Bd. of Commrs. (1997), 121 Ohio App.3d 188.
[3] Id. at 192, citing Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704.
[4] Temple v. Wean United, Inc. (1997), 50 Ohio St.2d 317, 327.
[5] Dresher v. Burt, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107.
[6] Id. at 293.
[7] (1991), 59 Ohio St.3d 115.
[8] (1988), 36 Ohio St.3d 100, paragraph five of the syllabus.
[9] Fyffe, supra at paragraph one of the syllabus.
[10] Id. at paragraph two of the syllabus.
[11] Watson v. Cleaners Hanger Co. (Oct. 22, 1998), Cuyahoga App. No. 74314; Cook v. Cleveland Electric Ill. Co. (1995), 102 Ohio App.3d 417,429; Gertz v. Nerone Sons, Inc, Cuyahoga App. No. 80422, 2002-Ohio-3782.
[12] Id.
[13] Ballard Depo. at 21.
[14] Ballard Depo. at 45-46.